## COURT OF SESSIONS.

THE PEOPLE OF THE STATE OF NEW YORK agt. SIDNEY
BURR.

A *tradesman* to whom raw materials are given to be converted into manufactured
articles, (leather stock to be manufactured into shoes,) who contracts and receives
them in good faith, is not guilty of *embezzlement*, by a subsequent *wrongful con-
version* of the manufactured articles.

The employment of the tradesman, is an *independent contract*, and creates not the
relation of master and servant, but that of *bailor and bailee.*

*Kings County, June,* 1871.

THE defendant was tried and convicted of embezzlement
at the May term of this court. Several questions presented
by the case, being reserved for subsequent consideration and
disposal.

TROY, J.—The evidence established the following facts:
—The defendant, a boot and shoe maker, residing in the
city of Brooklyn, was occasionally employed as such by the
prosecutor who was a shopkeeper in the business of manu-
facturing and selling boots and shoes in the city of New
York, to manufacture for him, he furnished the materials
ready cut and prepared for manufacture, the defendant
taking those materials to his own house and returning the
work when completed. He was not paid regular wages;
his compensation depending upon and being regulated by
the quantity of work performed at fixed prices, and pay-
ment to be made on the completion and return of the work
as agreed on.

He was not permanently or exclusively employed by the
prosecutor, but did such other work in addition to that fur-
nished by him as he could obtain.

In January last he received from the prosecutor at the city of New York, " seventy-two pairs of stock for shoes," of the value of sixty-five dollars, to be made into shoes and returned when completed ; that he brought the goods to his home in Brooklyn, and having completed the work, he carried it to New York, for the purpose of returning it to the prosecutor, when under the influence of liquor he sold, or consented to the sale, of the property, and shared the proceeds with a companion.

The statute defining the offense of embezzlement, declares that, " if any clerk or servant of any private person, or of any copartnership, (except apprentices and persons within the age of eighteen years,) or if any officer, agent, clerk or servant of any incorporate company, shall embezzle or convert to his own use, take, make away with, or secrete with intent to embezzle, or convert to his own use, any money, goods, rights of actions, or other valuable securities or effects whatever, belonging to any other person which shall have come into his possession or under his care by virtue of such employment or office, he shall upon conviction be punished in the manner prescribed by law for feloniously stealing." &c,

The indictment in this case describes the prisoner as the clerk and the servant of prosecutor, and charges him with having embezzled " seventy-two pairs of stock for shoes."

Embezzlement is a species of larceny, and the term is applicable to cases of furtive and fraudulent appropriation by clerks, servants or carriers of property coming into their possession by virtue of their employment, it is distinguished from larceny, properly so called, as being committed in respect of property which is not at the time in the actual possession of the owner. (See 4 *Blackstone's Com*, 220, 231 ; *Burrill's Law Dic.*, vol. 1, p. 415 ; *Barbour's Crim. Law*, 149 ; 3 *Archabold's C. P. & P.*, 449 ; *Roscoe's Cr. Ev.* 414 ; *Russell on Crimes*.)

To constitute larceny, it is necessary that the property

should be taken from the possession of the owner or person in possession thereof with a felonious intent, and it may be committed by any person ; whereas embezzlement under our statutes can only be committed by a clerk or servant of a private person, or of a copartnership, or an officer, agent, clerk or servant of an incorporated company, or by a carrier; it cannot be committed with respect to property in the possession of the owner, employer or master, but only of such property as shall have come into the possession of the class of persons described, by virtue of their employment or office. The law contemplates a lawful possession in the servant acquired from some person other than the master, but by virtue of his employment and his appropriation while in *transitu* before it reaches the hands of such master or employer or is applied to the purposes directed by him. When the property or money received is delivered to the owner by the servant, or applied as directed by him, it ceases to be the subject of embezzlement, and if taken thereafter feloniously, it is larceny, not embezzlement. *(See 2 Leach.* 831 ; *1 Leach.,* 28; *and cases referred to.*)

And a distinction is drawn in this country, as was formerly in England, between the case of property or money placed in the hands of the servant or clerk by the master or employer for any purpose, and the case of money or property received by the clerk or servant for the master from a third party. In the first case, the clerk or servant is decided to have merely the custody of the property as contra-distinguished from the legal possession, which remains in the master or employer. In the other case, as the person paying the money or delivering the property to the servant intends to part, and does part, with the possession and the temporary or permanent control of the thing delivered, and as the master acquires no possession or control until delivery to him, and in the mean time possession and control must be in some one, the clerk or servant is the only person who can be said to have such possession.

Now, by the term custody of property as contra-distinguished from legal possession, I understand to be meant, that, charge to *keep* and *care* for the owner, subject to his order and direction without any interest or right therein adverse to him, which every servant possesses with regard to the goods of his master confided to his mere care, which custody may be terminated or prolonged according to the will and pleasure of the master.   But where the owner of personal property delivers it to another for any purpose, intending not only to part with the custody but with the absolute right or control of the property *for any length of time,* he parts not only with such custody but with the legal possession as well, for the actual possession of the property with a cessation of the rights of ownership for a period, however short, transforms such actual possession which under other circumstances might create but a mere custody, into a legal possession in the person having it; and that this is so it seems to me there can be no doubt, for if the manual possession is gone from the owner, and the right of ownership and control is ever so temporarily suspended, where can the legal possession be, if not in the person having the manual possession and the right to hold it as against every one?   For the owner has not the manual possession and his right as owner has ceased by temporary waiver, agreement or otherwise, so having neither the manual possession or the right of disposal, such possession and right must be elsewhere ; and if elsewhere and united in the same person, it constitutes a legal possession for the time being against the world.

Consequently, where a bailment occurs in good faith on both sides, and the bailee subsequently converts the property, he cannot be convicted of larceny, for it is not a taking from the owner, and he cannot be convicted, of taking from his own possession.

Accordingly, if a man hire a horse to ride a journey, intending at the time to return him, and sell him afterwards

The People agt. Burr.

on the road, he cannot be convicted of larceny—of course he would have no right to sell—the purchaser would take no title, not even the use of the animal for the unexpired term of the bailment, because the bailment would be determined by the wrongful act, and the owner could claim his property *instanter ;* but the bailee could not be convicted of larceny, for he had the actual possession and the right thereto as against the owner, and therefore the legal possession, or if in the case last supposed, the property should be stolen from the bailee by a third party; the indictment might describe the property as that of the bailor or bailee ; but in either case it must necessarily charge that it was taken from the possession of the bailee, and if it charged that such property was taken from the possession of the real owner, and it appeared that such taking was during the bailment while the owner had neither the actual possession or right thereto, the thief could not be convicted thereunder.

Now, the facts in this case being settled, the first question arising for determination is, does the defendant come within the class of persons described in the statute by whom the crime of embezzlement can be committed ?—in other words, was he a clerk or servant of the prosecutor ? I do not think he was either; he was certainly not the clerk of the prosecutor, and I cannot regard him as his servant in any sense of the term ;—of course the term " servant" does not mean nor is the language limited in its application to the mere menial servant of the prosecutor, but it does mean and intend that relation between the parties which gives the employer the right to order, command, direct and control, and imposes on the person employed the duty of obedience and subjection in the performance of the particular service, at all times and in every particular, and with regard to the property of the master delivered by him to the servant in the course of such employment, gives to such servant the temporary custody thereof merely, the legal possession remaining in the owner.

The employment of the prisoner in this case, was not of such character, it was an independent contract and created, not the relation of master and servant, but that of bailor and bailee. The property was delivered to the prisoner in pursuance of this contract to be returned to the bailor when the contract was completed. The bailor parting not only with the custody but with the possession and his right to control same, until the completion of the contract, reserving no right to control or direct the bailee in the mean time, either in the performance of the work, the place of performance or the agency or manner of such performance.

The bailor could not demand, nor would he be entitled to reclaim, the said property before the completion of the contract; he could not dictate to the bailee as to whether the bailee himself should do the work or whether it should be done by others under the bailee's direction; he had no right to say at what place or places it should be done, or prescribe the means of doing it; he could only hold the, bailee responsible for a performance of the contract, without having any power over the agency by which such performance was effected, and when the contract was completed he could not then compel a delivery of the property without paying the contract price; on the other hand, the bailee had a right to perform the work where he pleased, to do it himself, or employ others to do it, as he thought proper; his duty to the bailor was to fulfill the contract; the way, manner, and means, of such fulfillment resting entirely with himself. He had a lien also upon the property for the contract price and the right to hold the property as against the bailor for a sufficient time to perform the contract, and thereafter until paid he had not only the custody but the possession of the property, and possession coupled with an interest as against the bailor, the right of the prosecutor as owner to reclaim or interfere with the property being suspended during the performance of the contract.

On the other hand a servant is at all times and places, while in the service of the master and about the performance of his servitude, subject to the commands and directions of such master; the manner of performing the work, the means of such performance, the place thereof, and all the details in respect thereto, are equally within his control; he can stop the work when he sees fit, change the original directions given about it from time to time, do it as he pleases and alter it again as he may desire; take the property from the custody of the servant, and discharge him at his pleasure. The servant would have a mere custody, the legal possession remaining in the master. The servant would have no lien for his labor on the property, and without possession none could exist. The master would have the absolute control—the servant would be the mere machine.

The distinctive characteristics of the relations of master and servant and bailor and bailee, are so clearly marked and defined that no doubt can be entertained of the real nature of the relationship existing between the prosecutor and the prisoner. In this case it was that of employer and employee, under a contract between the parties whereby mutual and independent rights were created and conferred, and the prisoner was in no sense of the term either the clerk or the servant of the prosecutor.

As the conclusion I have come to on this point substantially disposes of the conviction, it might not be necessary to regard the other matters which effect it. And yet it may not be proper to pass over any other defect which would render the conviction invalid, independent of the correctness of my views on the first point. And that there are others fatally defective there can be no doubt. In the first place, the indictment charges the embezzlement of stock ; the proof is that the stock was made into shoes by the direction of the owner. The act of thus converting the stock into manufactured articles did not constitute an illegal

appropriation to the use of the prisoner.; that he thereafter made away with the shoes is beyond doubt; but it was *shoes* he appropriated, not *stock*,—he could not therefore, if the other facts necessary to constitute embezzlement existed, be convicted thereof under the indictment of embezzling *stock*, the proof being of *different articles*. (*See Com. agt. Merrifield*, 4 *Met.*, 468.) In the second place—apart from what has been already said—if the unauthorized appropriation of the property constituted any offense, such offense was committed in the city and county of New York, and without the jurisdiction of this court.

I can find no case under our statutes at all analogous to this. The idea is entirely new to me that a tradesman to whom raw materials are given to be converted into manufactured articles, who contracts and receives them in good faith upon a contract such as existed in this case, would be guilty of embezzlement by a subsequent wrongful conversion. Perhaps the act should be made a crime,—morally there may be no difference between it and the acts which constitute embezzlement; but it is certainly not a crime at common law, and, therefore, until our statutes make it one, the courts cannot so regard it. It may be said this view of the law imposes hardship upon employers, but I do not see that such is the fact. It is simply necessary that they should use discrimination in the selection of workmen, and know who they are dealing with; in this way they can protect themselves, or in many others; they may require security, or make such special contracts as by retaining in themselves the legal possession and constituting the person employed but a mere servant, as will bring such person within the statute of embezzlement.

The English cases afford very little light on the subject, as the English statutes relating to it are broader and better than ours; in fact, in England, except so far as the mere proof is concerned, the distinction between embezzlement and larceny has ceased to exist; a conviction can now be

The People agt. Burr.

of either offense under an indictment charging the other. *(See 24 and 25, Victoria, C.,* 96 §§ 68, 72). And the question of possession is disposed of by a special statutory provision, declaring that the property shall be deemed to have been taken from the possession of the master or employer, although such master or employer did not receive same, other than by the actual possession of the clerk, servant, or person employed.

Entertaining these views, it becomes the duty of the court to set aside the verdict herein; and as there is considerable doubt with regard to the power of the court to set aside a verdict without ordering a new trial, the order will be in that form; but as a new trial in this case would be but a mere matter of formality, and a conviction could not under any circumstance be had, the prosecuting officer, if he desires it, can have an order of *nolle prosequi ;* but in the meantime, whether such order is entered or indictment retried, the prisoner is discharged without bail.