### State of Vermont v. Homer J. Ward

[562 A.2d 1040]

No. 86-285

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed April 21, 1989

*Philip R. Danielson, Chittenden County Deputy State's Attorney*, Burlington, for Plaintiff-Appellee.

*Charles S. Martin* and *John Boese, Law Clerk (On the Brief)*, of *Martin and Paolini*, Barre, for Defendant-Appellant.

**Dooley, J.** Following a jury trial in Chittenden District Court, defendant was convicted of embezzlement, in violation of 13 V.S.A. § 2531. Defendant appeals the conviction, contending that the trial court made several reversible errors. Our review of the proceeding below reveals fundamental error so serious that the conviction must be reversed and vacated.

This case emerges from an employer-employee dispute between defendant and his immediate supervisor. Relations between defendant and his employer began to deteriorate when defendant, who was employed as a bartender at a private club, called in sick on August 19, 1985. Defendant's call precipitated a heated exchange over whose responsibility it was to secure a replacement bartender. By the following day, when defendant returned to work, the tension between him and the supervisor had not eased, and after a brief conversation between the two, defendant quit his job and left the premises. When defendant left the club, he took with him a sum of money, in excess of $100, which he had removed from the cash drawer. Evidence indicates that defendant left a note in the cash drawer explaining that he was taking the money owed him as his previous week's wages. The evidence also indicates that he took no more money than he was owed.

On October 16, 1985, defendant was charged, by information, with embezzlement, 13 V.S.A. § 2531. On May 9, 1986, following a three-day trial, the jury returned a guilty verdict.

On appeal, defendant assigns as error three points. We do not reach them, however, because there is an organic defect in the information and trial that we must address sua sponte. Under the facts established at trial, defendant was charged with a crime that he could not have committed.

Embezzlement is the fraudulent conversion of the property of another by one who is already in lawful possession of it. 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.6, at 368 (1986). It is axiomatic that in order to secure a conviction for embezzlement, the State must prove each element of the offense, including: fraudulent intent, conversion, ownership by another, and

lawful possession by the accused. See 13 V.S.A. § 2531; 2 W. LaFave & A. Scott, *supra*, § 8.6, at 368. Accepting the facts in the light most favorable to the State, see *State* v. *Jaramillo,* 140 Vt. 206, 208, 436 A.2d 757, 759 (1981), it was not possible for the prosecution to prove the necessary element of possession.

The instant case is factually indistinguishable from, and is thus controlled by, our decision in *State* v. *Rathburn,* 140 Vt. 382, 442 A.2d 452 (1981). In *Rathburn,* the defendant, an assistant manager of a state liquor store, was charged with repeated thefts of money from cash registers in the store. The State alleged that Rathburn's conduct constituted larceny, and he was convicted of that crime. After his conviction, he appealed to this Court arguing, in part, that he should have been charged with embezzlement because he had lawful possession of the monies in the cash drawers at the time of the conversions. We rejected his argument based on our determination that an employee who comes into lawful possession of money by accepting it from a customer and places the money in a cash drawer, loses any possessory interest. Constructive possession passes to the store owner. Thus, we held:

> Cash received by the liquor store clerks was regularly deposited in the store's cash registers. At the time of deposit the cash registers were in the constructive possession of the state. When the defendant later removed cash from these registers and appropriated it for his own use, the taking was a trespass and the crime was a larceny.

*Rathburn,* 140 Vt. at 386, 442 A.2d at 454.

This is to be contrasted with the situation where an employee accepts money from a customer and converts it to his or her use without ever permitting it to pass to the employer, either directly, or through a receptacle belonging to the employer. In such a case, at the time the customer hands the funds to the employee, the employee is in lawful possession of the property. 2 W. LaFave & A. Scott, *supra*, § 8.6, at 376. If the conversion occurs before the money is deposited in a cash drawer, there is no trespass, and thus there is no larceny. The crime is embezzlement. *Id.* As indicated in *Rathburn,* however, once money received by an employee is deposited in the cash drawer of the owner, the employee no longer has possession but retains only custody. Constructive possession is in the owner. *Rathburn,* 140 Vt. at 385-86, 442 A.2d at 454. A conversion at this point involves a trespass, and is thus

larceny, provided that the remaining elements of that crime can be proved. *Id.*

In the instant case, the State alleged, and defendant admitted, that the money was removed from the cash drawer at a time when the only money in the drawer was a $200 "bank" belonging to the club. There is no question that at the time of the taking, defendant had custody and not possession of the money.[1] Lacking possession, it was legally impossible for defendant to commit embezzlement.

The error in this case is much more than technical. The crux of defendant's defense was that he took only what was owed him on the belief that he was legally entitled to do so. The State argues that even if defendant was owed the money, he could not lawfully take it from the cash register. Apparently, the court believed that a claim-of-right defense was not generally available in embezzlement cases.[2] While this conclusion is itself debatable, see

---

[1] That defendant had mere custody is further supported by the fact that the taking occurred immediately after defendant had "cashed-up" the previous week's receipts. This process involved a review of the register receipts by defendant's supervisor and the surrender of a corresponding amount of cash. After cashing-up, the drawer, containing only the $200 "bank," was returned to defendant. Given this scenario, the capacity in which defendant held the money was akin to a situation in which a master puts his or her servant in charge of property, giving up custody, but constructively retaining possession. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.2, at 336. This is not the type of activity intended to be encompassed within the statutorily created embezzlement offense.

[2] This is demonstrated by the fact that the court gave a limited claim-of-right instruction, stating in part that "[t]o prove that defendant acted with fraudulent intent the State must prove that when he converted the money, he was not acting with a good faith belief that he had authority or permission to do so." The charge stressed, however, that, in order for the defense to be effective, defendant must have believed that such a taking was authorized "in the normal course of his employment." The trial court's view appears incomplete, and thus, is much more restrictive than the approach to the claim-of-right defense taken by the drafters of the Model Penal Code. See Model Penal Code § 223.1(3) and Comment 4 (1962). According to § 223.1(3)(b), it is an affirmative defense to the Code's consolidated theft offense (which includes both larceny and embezzlement) if a defendant "though he knew of the ownership of another . . . believed that he nevertheless had a right to acquire or dispose of the property . . . as he did." Model Penal Code § 223.1 Comment 4 (1962). The claim-of-right defense provided under § 223.1(3)(b) does not require that a defendant's belief depend on practices in the normal course of employment. Defendant's claim-of-right in the instant case is consistent with § 223.1(3)(b) of the Model Code — which seems to state a reasonable view of such defense.

*American Life Insurance Co.* v. *United States Fidelity & Guaranty Co.*, 261 Mich. 221, 225-26, 246 N.W. 71, 73 (1933); 2 W. LaFave & A. Scott, *supra*, § 8.6, at 379, we need not address the availability of affirmative defenses to a crime that was improperly charged. It is sufficient that, as a result of the lower court's rulings, defendant was denied an essential defense that clearly would have been available had he been charged with larceny. See, e.g., 2 W. LaFave & A. Scott, *supra,* § 8.5, at 358-59 (one who takes property under an honestly held claim-of-right "lacks the intent to steal required for larceny" even though the belief might be mistaken or unreasonable).

Thus, there was fundamental error so detrimental to defendant's rights as to constitute plain error, V.R.Cr.P. 52(b), and for that reason we have addressed it here even though neither the parties nor the trial court discerned the nature of the defect. See *State* v. *Bergerson,* 144 Vt. 200, 204, 475 A.2d 1071, 1074 (1984). In *Bergerson,* this Court reversed and remanded without ever reaching the errors alleged by the defendant. The decision in that case was based on a trial court error that we "addressed . . . upon our own motion because of its 'possible adverse effect on the fair administration of justice and the rights of defendant.' " *Id.* (quoting *State* v. *Moran,* 141 Vt. 10, 20, 444 A.2d 879, 884 (1982)); see also *Quesnel* v. *Quesnel,* 150 Vt. 149, 154, 549 A.2d 644, 648 (1988) (Peck, J., dissenting) (instructing that in appropriate cases and "in the interests of justice" the Court should sua sponte address issues neither raised nor briefed). Because of this error, we must reverse.

*Reversed and vacated.*

**Peck, J.**, dissents without opinion.