## John F. Wilk v. Joseph P. Wilk

[795 A.2d 1191]

No. 00-316

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 22, 2002

*Arthur E. Crowley, Jr.*, Rutland, for Plaintiff-Appellee.

*Richard S. Bloomer*, Rutland, for Defendant-Appellant.

**Morse, J.** Defendant Joseph P. Wilk appeals the decision of the superior court in this action for partition ordering him to transfer his one-eighth interest in a parcel of property located in the Town of West Rutland to plaintiff John F. Wilk in exchange for one-eighth of the fair market value of the parcel as determined by a panel of court-appointed commissioners. Defendant argues that the court erred by

failing to order a public sale of the property and a subsequent dispersal of the proceeds to himself and plaintiff. He contends that the facts of this case are controlled by our holding in *Billings v. Billings*, 114 Vt. 512, 49 A.2d 179 (1946), and that *Billings* mandates such an outcome. We take this opportunity to overrule *Billings* and its progeny and affirm the trial court's ruling.

The property at issue is a one-acre parcel of land with a house, commercial garage and office located on it. Plaintiff has operated a paving business out of the buildings on the property, and defendant — plaintiff's brother — operates a junkyard on an adjoining parcel of land. In May 1997, both parties acquired a one-eighth interest in the property by inheritance from their mother, as did their six siblings. Plaintiff subsequently purchased the interests of his six siblings, subject to a life estate held by one of his sisters, and filed this partition action in the superior court. The court appointed three commissioners, who prepared a report and submitted it to the court. The commissioners concluded that the parcel could not reasonably be divided between plaintiff and defendant and that the fair market value of the property was $125,000. Both parties sought an order from the court conveying the other's interest in exchange for the value of the respective shares in the property. Following a hearing on the merits, the court concluded that the equities favored plaintiff and ordered defendant to convey his one-eighth interest in the property in exchange for $15,625 (one-eighth of $125,000).

Defendant argues that the facts of this case are controlled by our holding in *Billings v. Billings*, 114 Vt. 512, 49 A.2d 179 (1946), and that the trial court was bound to order a public sale of the contested parcel. In *Billings*, this Court split three-to-two over the interpretation of the statutory scheme governing partition. The language at issue was identical to that of the statutes in effect today. Compare *id.* at 514, 49 A.2d at 181, with 12 V.S.A. §§ 5174-5175. The majority in *Billings* concluded that, when two parties own equal shares in a piece of property and *both* wish to take assignment of the other's share, the statutory scheme requires public sale of the property. *Billings*, 114 Vt. at 517, 49 A.2d at 182. Although this case involves two parties owning unequal shares in a property, because the facts are sufficiently analogous and the Court made no distinction in its interpretation of the statutory scheme between multiple parties with equal shares and multiple parties with unequal shares willing to take assignment, *Billings* would control. For reasons explained

below, however, we overrule *Billings* and hold that, under the statutory scheme, a trial court may consider the relative equities of multiple parties wishing to take assignment of an outstanding interest in a parcel and assign that interest to one of the parties, instead of ordering a public sale.

Under the common law, courts were limited to the remedy of partition in kind, or partition by allotment, when individuals decided to end co-tenancy. See P. Craig-Taylor, *Through a Colored Looking Glass: A View of Judicial Partition, Family Land Loss, and Rule Setting*, 78 Wash. U. L.Q. 737, 752 (2000); see also *Blanchard v. Cross*, 97 Vt. 370, 373, 123 A. 382, 383 (1924). Partition by sale and related powers such as assignment were statutory remedies, created to augment the equitable powers of the courts. See *Blanchard*, 97 Vt. at 373, 123 A. at 383 ("The right to partition by allotment was a common law right, but the right to partition by sale is purely statutory. Such a statute [is] an innovation upon the common law . . . ."); Note, *Acquiring Property Through Forced Partitioning Sales: Abuses and Remedies*, 27 B.C. L. Rev. 755, 760 (1986) (noting that states promulgated statutes allowing partition by sale to address situations where partition in kind was impractical or inadvisable). Section 5174 is such a statute. It states:

> When it appears that the real estate, or a portion thereof, cannot be divided without great inconvenience to the parties interested, the court may order it assigned to one of the parties, provided he pays to the other party such sum of money, at such times and in such manner as the commissioners judge equitable.

12 V.S.A. § 5174. The only exception, or limitation, to this statutory power is found in § 5175, which provides, "[i]n case one of the parties interested will not take such assignment and pay such sum, the court shall order the commissioners to sell such estate at public or private sale." 12 V.S.A. § 5175.

In *Billings*, this Court was called upon to mediate the interplay of these two statutes when parties owning equal interests in a piece of property both were willing to take an assignment and pay the other for the half share of the property. The two dissenting justices in that case noted that, in addition to providing remedies beyond those available in the common law, the language of § 5174 was permissive with respect to the assignment remedy (when property cannot be

conveniently divided, "the court *may* order it assigned to one of the parties") (emphasis added). *Billings*, 114 Vt. at 519-20, 49 A.2d at 183-84 (Moulton, C.J., dissenting with whom Jeffords, J., joins). From this they discerned an intent to give the trial court discretion when making an assignment, allowing it to do so even when competing parties sought such a remedy. *Id.* at 519-20, 49 A.2d at 184 (permissive language "carries the implication of a power to make a choice, and in the exercise of a sound discretion to order an assignment to one or the other of the parties").

This conclusion is consistent with the principle that remedial statutes ought to be liberally construed. See *Carter v. Gugliuzzi*, 168 Vt. 48, 53, 716 A.2d 17, 21 (1998) (noting our policy of construing remedial statutes liberally). The statutory regime expanding the equitable powers of the court when faced with co-tenants wishing to end a co-tenancy, but unable to do so on their own, was implemented in response to problems arising from the limited remedy of partition in kind under the common law, as discussed above. Thus, it should be interpreted to give the trial court as many options as possible to achieve equity between the parties, including an expansive power to assign property to one of the co-tenants. Cf. 7 R. Powell, Powell on Real Property § 50.07[3][a], at 50-40 (M. Wolf, ed. 2001) ("The common-law partition action is equitable in nature. This suggests that courts should consider all relevant circumstances to ensure that complete justice is done . . . .").

Furthermore, as the *Billings* dissent noted, partition by sale is not a favored remedy. 114 Vt. at 519, 49 A.2d at 183; see also *Butte Creek Island Ranch v. Crim*, 186 Cal. Rptr. 252, 254-55 (Ct. App. 1982) (noting that partition by forced judicial sale is "strongly disfavored" and is not available absent proof of the equities of such a result where co-tenants wish to dissolve a co-tenancy). Our statutory scheme appears to make it the exception, rather than the rule, by placing it last in priority among the powers of a trial court: §§ 5169 through 5173 provide that when a party owning a partial interest in a property seeks a partition, the property should be divided among those with interests in the property by a judgment of the trial court, which is then recorded in the registry of deeds. Only if the property cannot be physically divided conveniently may the court then consider the option of assigning the property to one of the parties in exchange for an equitable sum. 12 V.S.A. § 5174. Finally, if one of the parties will not take an assignment, the court is compelled to order

the property sold. *Id.* § 5175. In sum, under the statutory scheme, partition in kind is preferable to assignment, and assignment is preferable to sale.

The majority in *Billings* read into the statutory scheme an additional limitation on the power of the court to order assignment and gave the remedy of judicial sale preferred status in situations where the statute did not. It read the language of § 5175 requiring that "[i]n case one of the parties interested will not take such assignment" the court must order partition by sale, to mean alternately that if *more than one* party *is* willing to accept assignment, the court must order partition by sale. *Billings*, 114 Vt. at 517, 49 A.2d at 182. This reading is contrary to the plain language of the statute and does not comport with the overall scheme described above. See *Russell v. Armitage*, 166 Vt. 392, 403, 697 A.2d 630, 637 (1997) ("When the meaning of a statute is plain on its face, we have no need for construction, but rather must enforce it according to its terms."); see also *In re Handy*, 171 Vt. 336, 341, 764 A.2d 1226, 1233 (2000) ("It is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective.") (emphasis in original, internal punctuation and citation omitted).

Under general principles of stare decisis, and without examining the underlying reasoning of the decision, this Court declined in *Weenolsen v. Kamber* to overrule our reading of § 5175 in *Billings*, noting the Legislature's failure to amend the statute following the decision in *Billings*. *Weenolsen v. Kamber*, 137 Vt. 540, 541, 409 A.2d 577, 577-78 (1979). Nevertheless,"[w]hile we have the greatest respect for stare decisis, and the rule of long-standing legislative acquiescence in the judicial interpretation of statutes, neither can be allowed to prevail when it is determined . . . that an earlier decision is simply wrong." *State v. Begins*, 148 Vt. 186, 188, 531 A.2d 595, 596 (1987). Not only do we agree with the reasoning of the *Billings* dissent, that the language regarding the trial court's power to assign partial interests in a partition action is permissive and gives the trial court discretion to do so even in the face of competing claims, but we discern no additional limitation on that power other than the one reflected in the plain language of § 5175 — only when no party is willing to take an assignment is the court prevented from making one.

The argument commonly advanced in favor of limiting a court's discretion in making assignments when there are competing parties willing and able to take the assignment is that it will result in arbitrary choices. See Annot., *Partition: Construction and Application of Provision for Assignment, to One of Co-Owners, of Real Estate Not Readily Divisible*, 169 A.L.R. 862, 865 (1947) (citing *Corrothers v. Jolliffe*, 9 S.E. 889 (W. Va. 1889)). Although such an argument is more compelling in cases such as *Billings* where the parties concerned each own an equal share of the property, we find this argument unpersuasive overall. There are many occasions where courts are called upon to weigh the equities and award property to one party among several, even in cases where two parties have an equal claim to the property at issue. The most notable is found in the context of divorce. See *Cabot v. Cabot*, 166 Vt. 485, 500, 697 A.2d 644, 654 (1997) (statute under which court has authority to equitably divide marital property gives court broad discretion); see also *Mills v. Mills*, 167 Vt. 567, 568, 702 A.2d 79, 80 (1997) (mem.) (although trial court has broad discretion in dividing marital property, property must be awarded equitably).

A genuinely arbitrary decision would not survive abuse-of-discretion review on appeal. Moreover, if the record presents no basis to grant an assignment to one party over another, the trial court may simply decline to make an assignment and instead resort to partition by sale; as the dissent in *Billings* noted, the language regarding assignment is permissive, and therefore a court is not obligated to make one. Cf. *Shotwell v. Shotwell*, 119 S.E.2d 251, 254 (Va. 1961) (noting, in one of the few cases of the last century to address the issue of assignment under a partition statute, that trial court did not abuse its discretion by declining to order assignment where two parties were willing to take it, and instead ordering judicial sale). Eliminating the option of assignment when more than one party seeks it is unnecessary to guard against the danger of arbitrary decision-making and does more harm than good. Furthermore, we discern an important policy reason for *not* limiting a trial court's power to make assignments in such circumstances (resulting in the automatic sale of property whenever more than one party is interested in the whole).

· Forcing partition by sale when more than one co-tenant is willing to take assignment of the property could result in the unnecessary forced divestment of numerous family farms. Cf. Craig-Taylor,

*supra*, at 771-80 (concluding that forced partition by sale has had a disproportionately negative impact on African Americans that has resulted in the loss of family land, based in part on higher incidence of intestate succession among African Americans resulting in numerous co-tenants, and on more limited resources among African Americans limiting the ability to outbid an outside party in a public sale); see also *Chuck v. Gomes*, 532 P.2d 657, 661 (Haw. 1975) (Richardson, C.J., dissenting) (noting the importance of the favored status of partition in kind relative to partition by sale in a state such as Hawaii where, because of history, "the retention of land ownership in one family line is an important interest worthy of preservation and diligent protection"). It is one that is particularly pertinent here in Vermont. It is not hard to imagine siblings who, although they may have limited resources which enable them to buy out a co-tenant's share in the family farm, could not outbid a developer if forced to put the property up for public auction. Interpreting § 5175 to mandate such an outcome is contrary to the public's interest.

Sadly, there are even examples in case law of outside parties acquiring fractional shares in property otherwise held by family members, some of the shares being quite small, for the specific purpose of forcing a sale in order to acquire the entire property. See, e.g., *Black v. Stimpson*, 602 So. 2d 368, 369 (Ala. 1992); *Gilmore v. Roberson*, 139 So. 2d 604, 605-06 (Ala. 1962); see also *Watson v. Durr*, 379 So. 2d 1243, 1243-44 (Ala. 1980) (co-tenant family member initiated partition action at behest of land company before transferring his fractional interest to them). We should not facilitate such behavior by disregarding the preference given assignment to judicial sale in our statutory scheme.

 Forced sale is disfavored because the Legislature, and the common law that came before, sought to minimize the forced divestiture of family property where avoidable. This policy not only has continuing vitality today, but assumes more importance in the face of the increased pressures on rural landowners to sell land. It is reflected in the hierarchy established by our statutory scheme. We conclude, therefore, that our statutory scheme allows for assignment even when more than one co-tenant is willing to accept it, and gives the trial court discretion over whether to order an assignment and the choice of assignee.

■ With these principles in mind, we turn to the merits of this particular case.* Reviewing the record, we discern no abuse of discretion. In ordering defendant to assign his interest to plaintiff, the court found that plaintiff was conducting an active, viable business on the property. The court also found that he had expended considerable sums to construct an office on the property for his business. It found that he had maintained the property in a reasonable and neat manner, while defendant's use of his own adjoining property, as well as the property at issue, for the storage of junk, old cars, parts and rusted steel was in violation of local zoning regulations. Finally, the court found that the potential loss of use of a driveway across the subject property would not prejudice defendant because his adjoining parcel had substantial road frontage from which the property could be accessed.

Defendant does not specifically challenge any of these factual findings, which are all supported by the record. Accordingly, we see no basis for disturbing the trial court's judgment.

*Affirmed.*

---

* Because it does not appear from the record that either party acted in reliance on our decision in *Billings*, and applying the statutes as interpreted above will not lead to an inequitable result in this case, we will not limit the effect of this decision to prospective application only. See *Solomon v. Atlantis Dev., Inc.*, 145 Vt. 70, 74, 483 A.2d 253, 256 (1984) (adopting the United States Supreme Court's criteria for determining when decision should be given only prospective effect).