## State of Vermont v. Victoria E. Willard-Freckleton
## State of Vermont v. Calista L. Tanner
## State of Vermont v. Kara Orfanidis

[949 A.2d 416]

Nos. 05-334, 05-335 & 05-336

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed December 14, 2007

*William H. Sorrell*, Attorney General, *David Tartter*, Assistant Attorney General, and *Sara R. Parsowith* (On the Brief), Montpelier, for Plaintiff-Appellant.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendants-Appellees.

¶ 1. **Burgess, J.** The State appeals the district court's grant of motions to dismiss by defendants Victoria Willard-Freckleton, Calista Tanner, and Kara Orfanidis in three unrelated but factually similar cases. The three defendants were accused of stealing cash receipts from their employers. All three cases raise the question of whether an employee who steals property placed under her care, but remaining in her employer's constructive possession, violates the embezzlement statute, 13 V.S.A. § 2531. The trial court, following *State v. Ward*, 151 Vt. 448, 562 A.2d 1040 (1989), ruled that employees who take money already held in the constructive possession of their employers could not be guilty of embezzlement because there was no conversion of the money while in the legal possession of the employee. *Id.* at 450-51, 562 A.2d at 1041-42. Instead, according to *Ward*, taking such money would be a trespass by the employee against the employer's constructive possession, constituting a larceny. *Id.* We reverse and, in so doing, overrule *Ward*.

¶ 2. The trial court dismissed the charges against the three defendants pursuant to Vermont Rule of Criminal Procedure 12(d). When reviewing the grant of a Rule 12(d) motion to dismiss, we employ the same standard as the trial court and view the evidence in the light most favorable to the State, excluding modifying evidence, to determine whether the evidence can fairly and reasonably establish guilt beyond a reasonable doubt. *State v. Hutchins*, 2005 VT 47, ¶ 6, 178 Vt. 551, 878 A.2d 241 (mem.).

I. The Facts

A. *State v. Willard-Freckleton*

¶ 3. Victoria Willard-Freckleton was manager of a Dunkin' Donuts in Brattleboro. As part of her job, she was responsible for making bank deposits of daily sales proceeds. A company audit

revealed that the bank deposits did not match the daily sales records for thirteen days between February 10 and March 19, 2005, for a total discrepancy of $5,850. On March 26, after being questioned by Dunkin' Donuts management about the discrepancies and denying any knowledge, Willard-Freckleton left the store with proceeds for March 25 and 26 totaling $4,402. Willard-Freckleton had not deposited any of that money when the police questioned her on March 30, 2005. In that interview, Willard-Freckleton admitted to shorting the deposits entrusted to her and confirmed the amounts taken. She later returned the March 25 and 26 proceeds, minus nearly $700 that she had already spent.

## B. *State v. Tanner*

¶ 4. Calista Tanner worked at the Rockingham branch of Halliday's Flower Shop. On February 19, 2005, she traveled to Halliday's Bellows Falls branch where she helped transfer the day's proceeds from the store's cash register into manila envelopes. Tanner then brought those envelopes back to Rockingham for storage in that shop's cooler. While alone in the shop, Tanner removed cash from the envelopes before placing them in the cooler. After being questioned by police, Tanner admitted taking approximately $420 from the envelopes for personal use. Tanner also admitted deleting approximately ten to twelve transactions from the Rockingham shop's register and taking the corresponding cash, approximately $200 to $300. In total, Tanner admitted to stealing between $600 and $800 from her employer.

## C. *State v. Orfanidis*

¶ 5. On seven separate occasions in January and February 2005, Kara Orfanidis stole money from the cash register of her employer, a Fleming Oil gas station in Bellows Falls. On each occasion, the cash-out amount from her register was $35 to $140 less than the receipts. The discrepancies totaled $935.31. On the last occasion, Orfanidis took money from the register and abruptly left during her shift, locking the door behind her in the middle of the afternoon. Orfanidis later admitted taking money from the register.

## II. The Law

¶ 6. The State charged all three defendants with embezzlement under 13 V.S.A. § 2531. That statute provides:

> [A] clerk, agent, bailee for hire, officer or servant . . .
> who embezzles or fraudulently converts to his own use,
> or takes or secretes with intent to embezzle or fraudu-
> lently convert to his own use, money or other property
> which comes into his possession or is under his care by
> virtue of such employment, notwithstanding he may have
> an interest in such money or property, shall be guilty of
> embezzlement . . . .

13 V.S.A. § 2531. We have, to date, understood embezzlement and larceny to be mutually exclusive; embezzlement applying only when an accused, in lawful possession of property on behalf of the intended owner, converts that property to his own use before passing it to the owner's possession. In preempting legal possession by the owner, there is no trespass against that possession to complete the theft, and without a trespass there is no larceny. Thus, in *State v. Ward* this Court overturned an embezzlement conviction where an employee removed money from a cash drawer. 151 Vt. at 451, 562 A.2d at 1042. We said that a cashier had lawful possession of money accepted from a customer but lost any possessory interest once the money was placed in the cash drawer, at which time constructive possession passed to the store owner. *Id.* at 450, 562 A.2d at 1041-42 (citing *State v. Rathburn*, 140 Vt. 382, 386, 442 A.2d 452, 454 (1981) (affirming larceny conviction of employee who stole from cash register)). Under this reasoning, an employee who accepts money from a customer and converts it to her own use before putting it in the register commits embezzlement, whereas an employee who removes money from the register commits larceny. *Id.* In *Ward* we distinguished the control exercised by the defendant cashier over the money in the cash drawer as mere custody, rather than possession, and, lacking possession, "it was legally impossible for defendant to commit embezzlement." *Id.* at 451, 562 A.2d at 1042.

¶ 7. Here the State does not allege embezzlement of monies in the legal possession of the employees. Rather, in each of these three cases the State charged the defendant with taking money that "came into her care" by virtue of her employment. The State argues that the statute not only outlaws traditional embezzlement by an employee of "property which comes into his possession," but also expressly extends embezzlement to apply to an employee who wrongfully "takes . . . money or other property which comes . . .

under his care by virtue of such employment." The State contends that *Ward* erred in focusing solely on possession without considering the statute's alternative language covering an employee's theft of property "under his care." The State maintains that *Ward*'s requirement of lawful possession by the thief in every embezzlement case renders the "under his care" phrase nugatory, a result contrary to standard statutory construction. See *Holton v. Dep't of Employment & Training*, 2005 VT 42, ¶ 21, 178 Vt. 147, 878 A.2d 1051 ("Our rules of statutory construction require us to consider the statute as a whole giving effect to a statute's every word, sentence, and clause, when possible.").

¶ 8. *Ward*'s holding is not without support from outside authorities, even in a few jurisdictions with similar statutes. See, e.g., *State v. Weaver*, 607 S.E.2d 599, 605 (N.C. 2005) (maintaining distinction between larceny and embezzlement based on lawful possession).[1] These decisions focus not so much on the wording of the applicable statutes, but rather on earlier common law and English statutes. Under the common law, larceny required a trespass in the taking, i.e., a taking from someone else's lawful possession. 3 W. LaFave, Substantive Criminal Law § 19.6(a), at 99 (2d ed. 2003). Thus, one already in lawful possession of another's property who converted the property to his or her own use could not be guilty of larceny. *Id.* Early English embezzlement statutes were intended to close that loophole. *Id.* One of these statutes, passed in 1799, applied only to servants who converted property that they had taken into their possession on behalf of their employers. 39 Geo. 3, c. 85 (1799). The statute did not refer to mere custody or care of another's property and was accordingly interpreted to apply only when no trespass had occurred. See, e.g., *Regina v. Reed*, 6 Cox's Crim. Cases 284, 289-90 (Ct. Crim. App. 1854) (concluding crime was not embezzlement, but larceny,

---

[1] Rulings to this effect in other states that had similar statutes have been superseded by newer statutes that consolidate most theft crimes. See *Aabel v. State*, 126 N.W. 316, 319 (Neb. 1910), *superseded by statute*, Neb. Rev. Stat. § 28-510; *People v. Burr*, 41 How. Pr. 293 (N.Y. Sup. Ct. 1871), *superseded by statute*, N.Y. Penal Law § 155.05 (defining larceny to include embezzlement); *State v. Smith*, 1986 WL 5315, at *3 (Tenn. Crim. App. May 7, 1986), *superseded by statute*, Tenn. Code Ann. § 39-14-101 (consolidating theft crimes); *State v. Smith*, 98 P.2d 647, 648-49 (Wash. 1939), *superseded by statute*, Wash. Rev. Code § 9A.56.020(1)(a), *as recognized in State v. Linehan*, 56 P.3d 542, 546-47 (Wash. 2002) (holding that, under current statute, embezzlement is merely an alternate definition of theft, not an alternate means of committing the crime).

where coal delivery was in constructive possession of employer at time of its theft by employee). The elements laid out in this embezzlement statute were repeated in early American laws[2] and to this day are recognized as the general elements of embezzlement. See LaFave, *supra*, § 19.6, at 99 (defining embezzlement generally as the fraudulent conversion of the property of another by one who is already in lawful possession, but also recognizing that, as a statutory crime, definitions vary by jurisdiction). However, in determining the legislative intent behind Vermont's statute, its particular wording is of foremost importance.

¶ 9. Unlike the early English statutes, 13 V.S.A. § 2531 includes the phrase "under his care," which encompasses more than takings that occur while the defendant is in legal possession. Other jurisdictions have long interpreted statutes with similar phrases to extend embezzlement to property in the defendant's custody. See, e.g., *Henry v. United States*, 273 F. 330, 334 (D.C. Cir. 1921) ("The phrase 'under his care' will cover property merely in his custody, and therefore, under such a statute, it is immaterial whether he receives possession of the property from a third person or from his master; for in either case the property is under his care, and if he converts it he is guilty of embezzlement.");[3] see also LaFave, *supra*, § 19.6(e)(1), at 108 (noting that statutes using the phrase "in his possession or under his care" apply "without regard to the subtle distinction between custody and possession"); *id.* n.49 (collecting cases). Courts have understood these embezzlement-by-employee statutes as criminalizing the breach of trust by workers who steal property that is in their care by virtue of their employment. *Henry*, 273 F. at 339; *Grin v. Shine*, 187 U.S. 181, 196 (1902) (applying California law). We agree with those courts that construe statutes similar to our § 2531 as "contain[ing] no limitation as to the manner of the

---

[2] See, e.g., *Nolan v. State*, 131 A.2d 851, 858-60 (Md. 1957) (finding embezzlement statute copied "almost verbatim" from England's law should be interpreted similarly so that money taken from cash drawer was a trespass and therefore larceny, not embezzlement), *superseded by statute*, Md. Code Ann., Criminal Law § 7-102 (consolidating theft crimes).

[3] Accord *Gill v. People*, 339 P.2d 1000, 1003, 1005 (Colo. 1959); *State v. Lockie*, 253 P. 618, 620 (Idaho 1927); *State v. Konviser*, 259 P.2d 785, 787 (N.M. 1953); *State v. Crescenzo*, 332 A.2d 421, 427 (R.I. 1975); *State v. Fraley*, 76 S.E. 134, 136-37 (W. Va. 1912).

property coming into the agent's possession or under his control," *Lockie*, 253 P. at 620, and now join them.

¶ 10. Though generally bound by the principles of stare decisis to follow past precedent, we are not "slavish adherents" to this doctrine, *O'Connor v. City of Rutland*, 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.), and will overrule prior case law "when it is determined that an earlier decision is simply wrong." *Wilk v. Wilk*, 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002) (quotations and ellipses omitted). Meaning should be given, where possible, to all parts of a statute. *Holton*, 2005 VT 42, ¶ 21. *Ward*'s application of ancient distinctions between common law larceny and statutory embezzlement as originally enacted in England did not reach the issue we address today.[4] We now avoid the needless perpetuation of technicalities rendered obsolete by the Legislature's adoption of § 2531 and give meaning to the phrase "under his care" in that section to extend embezzlement to all cases in which employees convert their employers' property that is within their custody or control by virtue of their employment.

### III. Applying the Law

¶ 11. The parties do not address the question of whether, given this Court's reversal of the district court's dismissal of the instant cases based on its interpretation of existing law, our decision should be applied to these cases. Considering the state of the evidence at this stage of the proceedings, we do not address this question, but rather leave the issue for the trial court to resolve, if raised, when the facts are established to the point that the relevant criteria can be applied.

*Reversed and remanded.*

---

[4] Review of the State's information in *Ward* reveals that the defendant was charged, as here, with embezzling monies "under his care." However, the matter of today's statutory interpretation was neither raised nor resolved in the Court's decision.