2007 VT 67A



State
v. Willard-Freckleton (2005-334, 2005-335 &
2005-336)

 

[Filed
14-Dec-2007]

 




 ENTRY ORDER
 
 



 






 
 SUPREME COURT DOCKET NOS. 2005-334,
 2005-335 & 2005-336
 
 
 
 
  
 
 
 
 
 DECEMBER TERM, 2007
 
 
 



 




 
 State of Vermont
 
 
 
 
 }
 
 
 
 
 APPEALED FROM:
 
 
 
 
  
 
 
 
 
 }
 
 
 
 
  
 
 
 
 
  
 
 
 
 
 }
 
 
 
 
  
 
 
 
 
     
 v.
 
 
 
 
 }
 
 
 
 
 District Court
 of Vermont,
 
 
 
 
 
  
 
 
 
 
 }
 
 
 
 
 Unit No. 1, Windham Circuit
 
 
 
 
  
 
 
 
 
 }
 
 
 
 
  
 
 
 
 
 Victoria E.
 Willard-Feckleton
 
 
 
 
 }
  
 
 
 
 
 DOCKET NO.
 691-5-05 Wmcr
 
 
 

 

State of Vermont
                                                   
}

}

   
v.                                                                         
}

}

Calista L.
Tanner                                                     
}    DOCKET NO. 612-4-05 Wmcr

 

 

State of Vermont                                                    
}

}

   
v.                                                                         
}

}

Kara
Orfanidis                                                        
}    DOCKET NO.
710-5-05 WmCr

 

In the above-entitled cause, the Clerk
will enter:

In light of appellees’ motion for reargument,
this Court’s July 20, 2007 opinion in this matter is withdrawn and replaced by a
new opinion to be issued with the following changes:  paragraphs eleven
through thirteen from the earlier opinion are withdrawn and replaced by a new
paragraph eleven.  In all other respects, our decision remains the same,
and the motion for reargument is denied.

 

BY THE COURT:

 

 

_______________________________________

Paul L. Reiber,
Chief Justice 

 

_______________________________________

John A. Dooley, Associate Justice

                                                                       


_______________________________________

                                                                    Denise
R. Johnson, Associate Justice

 

_______________________________________

Marilyn S. Skoglund,
Associate Justice

 

_______________________________________

Brian L. Burgess, Associate Justice









 

 

 

State
v. Willard-Freckleton (2005-334, 2005-335 &
2005-336)

 

2007
VT 67A

 

[Filed
14-Dec-2007]

 

 

NOTICE: 
This opinion is subject to motions for reargument under
V.R.A.P. 40 as well as formal revision before publication in the Vermont
Reports.  Readers are requested to notify the Reporter of Decisions,
Vermont Supreme Court, 109 State Street, Montpelier,
 Vermont05609-0801
of any errors in order that corrections may be made before this opinion goes to
press.

 

 

                                                                  
2007 VT 67A

 

                                               
Nos. 2005-334, 2005-335 & 2005-336

 

 

State
of Vermont
                                                                           
Supreme Court

 

On Appeal from

    
v.                                                                                                
District Court of Vermont,

Unit No 1, Windham Circuit

 

Victoria
E. Willard-Freckleton                                                       
December Term, 2006

 

State
of Vermont

 

   
v.

 

Calista L. Tanner

 

State
of Vermont

 

   
v.

 

Kara
Orfanidis    

 

 

John P. Wesley,
J.

 

William
H. Sorrell, Attorney General, David Tartter,
Assistant Attorney General, and Sara R.

   Parsowith (On the Brief), Montpelier, for Plaintiff-Appellant.

 

Matthew F. Valerio, Defender General, and Anna Saxman,
Deputy Defender General,

  Montpelier, for Defendants-Appellees.

 

 

PRESENT:  Reiber, C.J., Dooley, Johnson, Skoglund
and Burgess, JJ.

 

 

¶  1.          
BURGESS, J.  The State appeals the district
court’s grant of motions to dismiss by defendants Victoria Willard-Freckleton, Calista Tanner, and
Kara Orfanidis in three unrelated but factually
similar cases.  The three defendants were accused of stealing cash
receipts from their employers.  All three cases raise the question of
whether an employee who steals property placed under her care, but remaining in
her employer’s constructive possession, violates the embezzlement statute, 13
V.S.A. § 2531.  The trial court, following State v. Ward, 151 Vt.
448, 562 A.2d 1040 (1989), ruled that employees who take money already held in
the constructive possession of their employers could not be guilty of
embezzlement because there was no conversion of the money while in the legal
possession of the employee.  Id.
at 450-51, 562 A.2d at 1041-42.  Instead,
according to Ward, taking such money would be a trespass by the employee
against the employer’s constructive possession, constituting a larceny.  Id.  We
reverse and, in so doing, overrule Ward.

¶  2.          
The trial court dismissed
the charges against the three defendants pursuant to Vermont  Rule
of Criminal Procedure 12(d).  When reviewing the grant of a Rule 12(d)
motion to dismiss, we employ the same standard as the trial court and view the
evidence in the light most favorable to the State, excluding modifying
evidence, to determine whether the evidence can fairly and reasonably establish
guilt beyond a reasonable doubt.  State v. Hutchins,
2005 VT 47, ¶ 6, 178 Vt.
551, 878 A.2d 241 (mem.). 

I.  The Facts

A.  State v. Willard-Freckleton

¶  3.          
Victoria Willard-Freckleton was manager of a Dunkin’ Donuts in Brattleboro.  As
part of her job, she was responsible for making bank deposits of daily sales
proceeds.  A company audit revealed that the bank deposits did not match
the daily sales records for thirteen days between February 10 and March 19,
2005, for a total discrepancy of $5,850.  On March 26, after being
questioned by Dunkin’ Donuts management about the discrepancies and denying any
knowledge, Willard-Freckleton left the store with
proceeds for March 25 and 26 totaling $4,402.  Willard-Freckleton
had not deposited any of that money when the police questioned her on March 30,
2005.  In that interview, Willard-Freckleton
admitted to shorting the deposits entrusted to her and confirmed the amounts
taken.  She later returned the March 25 and 26 proceeds, minus nearly $700
that she had already spent. 

 

B.  State v. Tanner

¶  4.          
Calista Tanner worked at the Rockingham branch
of Halliday’s Flower Shop.  On February 19,
2005, she traveled to Halliday’s 
BellowsFallsbranch where she helped
transfer the day’s proceeds from the store’s cash register into manila
envelopes.  Tanner then brought those envelopes back to Rockingham for
storage in that shop’s cooler.  While alone in the shop, Tanner removed
cash from the envelopes before placing them in the cooler.  After being
questioned by police, Tanner admitted taking approximately $420 from the
envelopes for personal use.  Tanner also admitted deleting approximately
ten to twelve transactions from the Rockingham shop’s register and taking the
corresponding cash, approximately $200 to $300.  In total, Tanner admitted
to stealing between $600 and $800 from her employer. 

C.  State v. Orfanidis

¶  5.          
On seven separate occasions
in January and February 2005, Kara Orfanidis stole
money from the cash register of her employer, a Fleming Oil gas station in BellowsFalls.  On each occasion, the
cash-out amount from her register was $35 to $140 less than the receipts. 
The discrepancies totaled $935.31.  On the last occasion, Orfanidis took money from the register and abruptly left
during her shift, locking the door behind her in the middle of the
afternoon.  Orfanidis later admitted taking
money from the register.

II.  The
Law

¶  6.          
The State charged all three
defendants with embezzlement under 13 V.S.A. § 2531.  That statute
provides:

 

[A] clerk, agent, bailee
for hire, officer or servant . . . who embezzles or fraudulently converts to
his own use, or takes or secretes with intent to embezzle or fraudulently convert
to his own use, money or other property which comes into his possession or is
under his care by virtue of such employment, notwithstanding he may have an
interest in such money or property, shall be guilty of embezzlement . . .
.

 

13 V.S.A. § 2531.  We have, to date, understood
embezzlement and larceny to be mutually exclusive; embezzlement applying only
when an accused, in lawful possession of property on behalf of the intended
owner, converts that property to his own use before passing it to the owner’s 
possession.  In preempting legal possession by the owner, there is no
trespass against that possession to complete the theft, and without a trespass
there is no larceny.  Thus, in State v. Ward this Court overturned
an embezzlement conviction where an employee removed money from a cash
drawer.  151 Vt.
at 451, 562 A.2d at 1042.  We said that a cashier
had lawful possession of money accepted from a customer but lost any possessory interest once the money was placed in the cash
drawer, at which time constructive possession passed to the store owner.  Id. at 450, 562 A.2d at 1041-42 (citing State
v. Rathburn, 140 Vt. 382, 386, 442 A.2d 452, 454 (1981)
(affirming larceny conviction of employee who stole from cash register)). 
Under this reasoning, an employee who accepts money from a customer and
converts it to her own use before putting it in the register commits
embezzlement, whereas an employee who removes money from the register commits
larceny.  Id. 
In Ward we distinguished the control exercised by the defendant cashier
over the money in the cash drawer as mere custody, rather than possession, and,
lacking possession, “it was legally impossible for defendant to commit
embezzlement.”  Id.
at 451, 562 A.2d at 1042.

 

¶  7.          
Here the State does not allege
embezzlement of monies in the legal possession of the employees.  
Rather, in each of these three cases the State charged the defendant with
taking money that “came into her care” by virtue of her employment.  The
State argues that the statute not only outlaws traditional embezzlement by an
employee of “property which comes into his possession,” but also expressly
extends embezzlement to apply to an employee who wrongfully “takes . . . money
or other property which comes . . . under his care by virtue of such
employment.”  The State contends that Ward erred in focusing solely
on possession without considering the statute’s alternative language covering
an employee’s theft of property “under his care.”  The State maintains
that Ward’s requirement of lawful possession by the thief in every
embezzlement case renders the “under his care” phrase nugatory, a result
contrary to standard statutory construction.  See Holton v. Dep’t of
Employment & Training, 2005 VT 42, ¶ 21, 178 Vt. 147, 878 A.2d 1051
(“Our rules of statutory construction require us to consider the statute as a
whole, giving effect to a statute’s every word, sentence, and clause, when
possible.”).

 

¶  8.          
Ward’s holding is not without support from outside
authorities, even in a few jurisdictions with similar statutes.  See,
e.g.,  State v. Weaver, 607 S.E.2d
599, 605 (N.C. 2005) (maintaining distinction between larceny and embezzlement
based on lawful possession).[1] 
These decisions focus not so much on the wording of the applicable statutes,
but rather on earlier common  law and English
statutes.  Under the common law, larceny required a trespass in the
taking, i.e., a taking from someone else’s lawful possession.  3 W. LaFave, Substantive Criminal Law §
19.6(a), at 99 (2d ed. 2003). Thus, one already in lawful possession of
another’s property who converted the property to his or her own use could not
be guilty of larceny.  Id. 
Early English embezzlement statutes were intended to close that loophole. 
Id. 
One of these statutes, passed in 1799, applied only to servants who converted
property that they had taken into their possession on behalf of their
employers.  39 Geo. 3, c. 85 (1799).  The
statute did not refer to mere custody or care of another’s property and was
accordingly interpreted to apply only when no trespass had occurred.  See, e.g., Regina v. Reed, 6 Cox’s Crim.
Cases 284, 289-90 (Ct. Crim. App. 1854) (concluding
crime was not embezzlement, but larceny, where coal delivery was in
constructive possession of employer at time of its theft by employee). 
The elements laid out in this embezzlement statute were repeated in early
American laws[2]
and to this day are recognized as the general elements of embezzlement. 
See LaFave, supra, § 19.6, at 99 (defining
embezzlement generally as the fraudulent conversion of the property of another
by one who is already in lawful possession, but also recognizing that, as a
statutory crime, definitions vary by jurisdiction).  However, in
determining the legislative intent behind Vermont’s statute, its particular wording is
of foremost importance.

¶  9.          
Unlike the early English
statutes, 13 V.S.A. § 2531 includes the phrase “under his care,” which
encompasses more than takings that occur while the defendant is in legal
possession.  Other jurisdictions have long interpreted statutes with
similar phrases to extend embezzlement to property in the defendant’s
custody.  See, e.g., Henry v. United States, 273 F. 330, 334 (D.C.
Cir. 1921) (“The phrase ‘under his care’ will cover property merely in his
custody, and therefore, under such a statute, it is immaterial whether he
receives possession of the property from a third person or from his master; for
in either case the property is under his care, and if he converts it he is
guilty of embezzlement.”);[3]
see also LaFave, supra, § 19.6(e)(1), at 108
(noting that statutes using the phrase “in his possession or under his care”
apply “without regard to the subtle distinction between custody and
possession”); id. n.49 (collecting cases). 
Courts have understood these embezzlement-by-employee statutes as criminalizing
the breach of trust by workers who steal property that is in their care by
virtue of their employment.  Henry, 273 F. at 339; Grin v. Shine,
187 U.S. 181, 196 (1902)
(applying California
law).  We agree with those courts that construe statutes similar to our
§ 2531 as “contain[ing] no limitations as to the
manner of the property coming into the agent’s possession or under his
control,” Lockie, 253 P. at 620, and now join
them.

 

¶  10.          
Though generally bound by
the principles of stare decisis to follow past
precedent, we are not “slavish adherents” to this doctrine, O’Connor v. City
of Rutland, 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.),
and will overrule prior case law “when it is determined that an earlier
decision is simply wrong.”  Wilk v. Wilk, 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002)
(quotations and ellipses omitted).  Meaning should be given, where
possible, to all parts of a statute.  Holton,
2005 VT 42, ¶ 21.  Ward’s application of ancient
distinctions between common law larceny and statutory embezzlement as
originally enacted in England
did not reach the issue we address today.[4]
We now avoid the needless perpetuation of technicalities rendered obsolete by
the Legislature’s adoption of § 2531 and give meaning to the phrase “under
his care” in that section to extend embezzlement to all cases in which
employees convert their employers’ property that is within their custody or
control by virtue of their employment.

III.  Applying
the Law

¶  11.      
The parties do not address
the question of whether, given this Court’s reversal of the district court’s
dismissal of the instant cases based on its interpretation of existing law, our
decision should be applied to these cases.  Considering the state of the
evidence at this stage of the proceedings, we do not address this question, but
rather leave the issue for the trial court to resolve, if raised, when the
facts are established to the point that the relevant criteria can be applied.

Reversed and remanded.

 

FOR THE COURT:

 

 

 

_______________________________________

Associate Justice

 















[1]  Rulings to this effect in other
states that had similar statutes have been superseded by newer statutes that
consolidate most theft crimes.  See Aabel
v. State, 126 N.W. 316, 319 (Neb.
1910), superseded by statute, Neb. Rev. Stat. § 28-510; People v.
Burr, 41 How. Pr. 293 (N.Y. Sup. Ct. 1871), superseded
by statute, N.Y. Penal Law § 155.05 (defining larceny to include
embezzlement); State v. Smith, 1986 WL 5315, at *3 (Tenn. Crim. App. May 7, 1986), superseded by statute,
Tenn. Code Ann. § 39-14-101 (consolidating theft crimes); State v.
Smith, 98 P.2d 647, 648-49 (Wash. 1939), superseded by statute,
Wash. Rev. Code § 9A.56.020(1)(a), as recognized in State v. Linehan, 56 P.3d 542, 546-47 (Wash. 2002) (holding
that, under current statute, embezzlement is merely an alternate definition of
theft, not an alternate means of committing the crime).





[2]  See, e.g., Nolan v. State,
131 A.2d 851, 858-60 (Md. 1957) (finding
embezzlement statute copied “almost verbatim” from England’s law should be interpreted
similarly so that money taken from cash drawer was a trespass and therefore
larceny, not embezzlement), superseded by statute, Md. Code Ann.,
Criminal Law § 7-102 (consolidating theft crimes).





[3]  Accord Gill
v. People, 339 P.2d 1000, 1003, 1005 (Colo.
1959); State v. Lockie, 253 P. 618, 620 (Idaho 1927); State v. Konviser,
259 P.2d 785, 787  (N.M. 1953); State v. Crescenzo, 332 A.2d 421, 427 (R.I. 1975); State v.
Fraley, 76 S.E. 134, 136-137 (W.Va.
1912).





[4]  Review of the state’s information
in Ward reveals that the defendant was charged, as here, with embezzling
monies “under his care.”  However, the matter of today’s statutory
interpretation was neither raised nor resolved in the Court’s decision.