2008 VT 62

**MALLETTS BAY HOMEOWNERS' ASSOCIATION, INC. v. MONGEON BAY PROPERTIES, LLC**

[955 A.2d 511]

No. 07-032

¶ 1. May 1, 2008. In this partition action, plaintiff homeowners' association appeals from a decision of the superior court granting partition by authorizing defendant to buy plaintiff's interest. In particular, plaintiff contends that: (1) the trial court failed to exercise independent judgment in balancing the equities of the case; (2) the court abused its discretion in assigning the property in question to defendant when the commissioners did not follow the instructions given in the court's letter of reference; (3) the court erred in relying on an incorrect interpretation of this Court's decision in *Wilk v. Wilk*, 173 Vt. 343, 795 A.2d 1191 (2002); and (4) the court erred in assigning the property to defendant without first holding a hearing to consider the equities of the case. We affirm in all respects.

¶ 2. At the heart of this case is a seven-acre parcel of land on Malletts Bay in Colchester, Vermont. The property had been owned by the Mongeon family since 1920, subject to leases that allowed camp owners to use the land to site their camps. In 1989, individual lessees incorporated a homeowners' association "for the purposes of securing a long-term, known, and enforceable interest" in the property. In 1995, the Mongeon family owners entered into a ground lease with the homeowners' association that covered most of the seven-acre parcel, including the land on which twenty-nine camps and one commercial building were constructed. In 2000, two members of the Mongeon family formed a limited-liability company to hold their title to the land. In December 2001, pursuant to its goal of acquiring for its members fee-simple interests in the land on which the camps were placed, plaintiff purchased a 43.75% undivided interest in the whole seven-acre parcel from a Mongeon family member. Between December 2001 and October 2004, plaintiff and defendant negotiated over plaintiff's proposal to purchase the remaining interest in the property. When these negotiations failed, plaintiff initiated this partition action in Chittenden Superior Court.

¶ 3. On March 29, 2005, the court issued an order of reference to commissioners pursuant to 12 V.S.A. § 5172 and Vermont Rule of Civil Procedure 53, appointing commissioners to take testimony and to make findings as to whether the property should be divided, sold, or assigned to one of the parties, and, if necessary, determine the fair market value of the property. The commissioners received a stipulation of facts, took testimony, and submitted a report of their findings and recommendations to the court on April 13, 2006. See 12 V.S.A. § 5172. The commissioners concluded that partition was not feasible and that the equities of the case did not clearly favor either party but instead only "slightly favor[ed]" defendant. The commissioners recommended that the dispute be resolved by a sealed-bid auction in which only the parties would participate and at which the property would go to the highest bidder. After both parties filed objections to the commissioners' report, the trial court held a hearing under V.R.C.P. 53 to examine the merits of each side's objections. At the

hearing, and without objection, the court allowed the parties to present arguments, but it did not take additional evidence.

¶ 4. After reviewing the record, the court concluded that there was no basis in law for the commissioners' recommendation that the property be sold in a sealed-bid auction. However, the court accepted the commissioners' finding that the equities slightly favored defendant and, ultimately, assigned the property to defendant. Plaintiff moved for reconsideration of the court's assignment order, and that motion was denied. This appeal followed.

¶ 5. We begin with plaintiff's argument concerning the balancing of the equities. Plaintiff argues that the trial court erred in adopting the commissioners' evaluation of the equities, because that determination was not supported by adequate findings or an explanation of how this determination was reached. As a finding of fact, plaintiff argues that it is clearly erroneous; as a conclusion of law, plaintiff argues that it is inadequately supported. Further, plaintiff argues that the superior court was required to state its own reasons for balancing the equities and that it failed to do so.

¶ 6. The order of reference given to the commissioners, the proceedings held by them, the reports they issue, and the action of the superior court on the report are governed by Vermont Rule of Civil Procedure 53. The order referring the matter to the commissioners for partition was also governed by 12 V.S.A. § 5169. Because the commissioners concluded that dividing the property between the two claimants could not be accomplished fairly, the commissioners created a method of assigning the property to one of the claimants pursuant to 12 V.S.A. § 5174. The overall content of their report was controlled by the order of reference. See V.R.C.P. 53(c); *Lindquist v. Adams*, 174 Vt. 179, 182, 811 A.2d 173, 175 (2002); *Messier v. Messier*, 140 Vt. 308, 313, 438 A.2d 397, 400 (1981). The commissioners were required to make findings of fact and conclusions of law. V.R.C.P. 53(e)(1). The superior court was required to accept the findings unless they were clearly erroneous. V.R.C.P. 53(e)(2)(ii); *Lindquist*, 174 Vt. at 182, 811 A.2d at 176 (the superior court reviews findings "in the capacity of an appellate court"). Moreover, as stated in *Wyatt v. Palmer*, 165 Vt. 600, 601, 683 A.2d 1353, 1356 (1996) (mem.), "[t]he findings of a special master, once adopted by the court, have the same force and effect as findings of the court."

¶ 7. The commissioners' evaluation of the equities can be viewed as a finding of fact or a mixed question of law and fact. A comparable question of how to partition property fairly between the parties was viewed as a question of fact in *Messier*, 140 Vt. at 314, 438 A.2d at 400. In that case, we evaluated the commissioners' partition decision under the clearly-erroneous standard. Alternatively, if we viewed the evaluation of the equities as a conclusion of law, we would review it to determine whether it is supported by adequate findings of fact. See *United States v. Cunningham*, 246 F.2d 330, 333 (4th Cir. 1957) (decided under F.R.C.P. 53). "Just as a judge in a trial without a jury is required to make adequate findings so that his conclusions may be reviewed by the appellate court so a [commissioner], in an action to be tried without a jury, is required to make findings of fact so that his conclusions may be adequately reviewed by the trial judge . . . ." *Id.*

¶ 8. Although we view the question here as similar to that in *Messier*, and thus subject to a clearly-erroneous standard, we would deny plaintiff's claim of error under either standard. The parties adopted a detailed statement of facts for consideration by the commissioners. The stipulation contains forty-eight numbered paragraphs and covers most of the equities raised by the parties in arguing who

should be assigned the property. The commissioners made findings of fact in forty-seven numbered paragraphs, based on the stipulation and the evidence they received. Three paragraphs in particular relate to the equities argued by the parties. The commissioners stated that they have "considered all equitable factors, including historical ownership and use of the [p]roperty, and the circumstances and purpose of [plaintiff's] . . . purchase of its interest in the [p]roperty." They noted that "both parties have been aggressive at times in pursuing their own self-interest with respect to the [p]roperty." They stated:

> There are equitable factors favoring each party. [Defendant] owns significantly more than half of the undivided fee, and the [p]roperty has been in the Mongeon family for 85 years. But for the fact that a minority interest ended up being owned by the Mongeons' cousin . . . [plaintiff] would not be in a position to force this partition action. On the other hand, members [of plaintiff association] have their homes on the property, and will control most of the [p]roperty for the next 30 years.

The commissioners decided that the equities slightly favored defendant.

¶ 9. None of the findings are clearly erroneous. Nevertheless, we agree with plaintiff that we could not uphold the commissioners' balancing of the equities if they failed to find the essential facts to explain the exercise of discretion. Cf. *Town of Sherburne v. Carpenter*, 155 Vt. 126, 131, 582 A.2d 145, 148 (1990) (reversing and remanding the trial court's denial of an injunction motion, because the trial court "was silent" on the basis of its equitable decision). On reviewing the record in this case, however, we are convinced that the commissioners made ad-

equate findings to explain their assessment of the equities.

¶ 10. The members of the association who constructed camps, or their predecessors, were aware of their limited legal interests when they acquired those interests. Nevertheless, under the ground lease, they were secure in their possession and use until the expiration of the ground lease in 2036. As both parties stressed in this Court, the parties desired to reach an agreement of the transfer of all land ownership to the holders of the camp leases, but defendant viewed this action as an aggressive attempt to gain an inappropriate advantage in those negotiations. Under those circumstances, the commissioners cited the significant and determinative equities and balanced them. The commissioners were obligated to make findings only as necessary to show how they reached their conclusion. See *Kruse v. Town of Westford*, 145 Vt. 368, 374, 488 A.2d 770, 774 (1985). They did not have a specific duty to make findings on each point raised as long as they satisfied the general standard. See *Monti v. Town of Northfield*, 135 Vt. 97, 101, 369 A.2d 1373, 1377 (1977). We believe that they did so.

¶ 11. We turn next to plaintiff's claims about the trial court's own weighing of the equities. Contrary to plaintiff's contention, the court concluded only that the commissioners' "ultimate recommendation [was] based on a misunderstanding about the law of partition in Vermont." However, the court did not find that the commissioners' factual findings were unsupported. Instead, the court emphasized key findings of fact, reiterating that the Mongeon family had owned the disputed property for eighty-five years and owned more than half of the property at issue. The court then restated the commissioners' conclusion that the equities slightly favored defendant. Although we agree with plaintiff that the commissioners and the court should make adequate findings

when weighing the equities of a case, see *Cunningham*, 246 F.2d at 333, we conclude that the court made the findings essential to a resolution of the case, and we reject plaintiff's argument to the contrary.

¶ 12. We next consider plaintiff's argument that it is entitled to relief because the commissioners did not, as the court's order of reference commanded, "consider the property interests of the individual camp owners." Plaintiff relies on Rule 53(c), which provides in pertinent part:

> The order of reference to the master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts . . . .

V.R.C.P. 53(c). We agree with plaintiff that "[t]he power of a master is completely dependent upon the order of reference." *Messier*, 140 Vt. at 313, 438 A.2d at 400. However, in cases where a reference is made to a master or commissioner, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions. *Hansen v. Town of Charleston*, 157 Vt. 329, 334, 597 A.2d 321, 323 (1991); V.R.C.P. 53(e)(2)(iii). If the commissioners did not adhere to the limits set in the court's order of reference, the court has the power to reject part or all of the commissioners' report. *Id.* The report of the commissioners, like the court's adoption of it, is considered a finding of fact that will not be disturbed unless clearly erroneous. *Messier*, 140 Vt. at 313-14, 438 A.2d at 400. We see no reason for concluding that the court abused its discretion in adopting the report or that the report itself was clearly erroneous, and plaintiff's arguments to the contrary must fail.

¶ 13. On this point, we note as well that plaintiff's complaint is more about the weight that the court assigned to the property interests of the camp owners than about its findings. The camp owners strongly urged that they should get title because they were in possession and needed title in order to protect their interests and to obtain financing for improvements of their properties. The commissioners and the court considered and weighed that interest. They concluded, however, that the camp owners' interest was not sufficient to overcome the interests of defendants. The court had discretion in weighing the competing interests, *Wilk*, 173 Vt. at 348, 795 A.2d at 1195, and we find no abuse of that discretion in its weighing of the equities here.

¶ 14. Plaintiff argues further that the court's decision to assign the property to defendant was based on an error of law — primarily because the court misunderstood and misapplied the reasoning of this Court's decision in *Wilk*. In particular, plaintiff contends that this case is distinguishable from *Wilk* because: (1) in this case, the parties discussed the sale or division of the property, and defendant was not unfairly surprised by plaintiff's request for partition; and (2) there are no "sinister motive[s]" present in this case.

¶ 15. Virtually all of the trial court's use of *Wilk* was in response to the commissioners' decision that the property should be sold. In rejecting the commissioners' decision, the trial court relied upon the *Wilk* holding that a "[f]orced sale is disfavored" and that the favored option is to assign the property to one of the cotenants particularly where family property is involved. *Id.* at 349, 795 A.2d at 1196. Plaintiff alleges that the court also used *Wilk* improperly in making its ultimate assignment decision. Specifically, plaintiff points to the following language in the superior court decision:

> *Wilk* stands for the proposition that the policy underlying Vermont's statutory scheme for partition disfavors outside parties

acquiring interests in property otherwise held by family members for the purpose of forcing a sale to acquire the entire property. In this case, [plaintiff] acquired a minority interest from a family member and is now trying to acquire the entire property.

Reading into this language, plaintiff suggests that the court assigned the property to defendant only because defendant was a family member and because assignment to a family member is required by *Wilk*. We think that plaintiff misreads the quoted language. The above text was followed by the court's statement that: "[f]or these reasons, this court rejects the sealed bid solution proposed by the Commissioners because it could result in the kind of disposition disapproved by the Vermont Supreme Court in *Wilk*." It is clear from this sentence that the superior court was talking about the forced sale required by the commissioners' decision and not about the assignment choice it had to make if the forced sale was rejected. Thus, we reject plaintiff's contention that the court misused *Wilk* in making its assignment decision; indeed, the court did not rely at all on *Wilk* in reaching that decision.

¶ 16. This brings us finally to plaintiff's argument that the trial court erred in not taking further evidence before reviewing the parties' objections to the commissioners' report. The commissioners conducted an evidentiary hearing and made findings based on that evidence along with the parties' stipulation of facts. At the hearing before the superior court, plaintiff did not request that the court take additional evidence. Instead, plaintiff's lawyer stated:

> If you feel you would like some further evidence on that issue, I'd be happy to present the testimony of every member here . . . . You tell me if you want the

evidence, I don't think it's going to be but ten, fifteen minutes of testimony from these members, if you want to hear it.

We cannot conclude that the lawyer's invitation preserved the issue plaintiff now raises. Failure to object below precludes review by this Court. *Begin v. Benoit*, 2006 VT 130, ¶ 7, 181 Vt. 553, 915 A.2d 786 (mem.). Because plaintiff failed to preserve this issue for appeal, we will not consider it.

*Affirmed.*