2012 VT 60

## Becky P. Nystrom, Scott and Laurie Nystrom v. Casey J. Hafford

[59 A.3d 736]

No. 11-283

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 3, 2012

Motion for Reargument Denied September 5, 2012

---

*Robert M. Fisher* and *Michael McGillion*, Law Clerk (On the Brief) of *Fisher & Fisher*, Brattleboro, for Plaintiffs-Appellees.

*Casey J. Hafford*, Pro Se, Townshend, Defendant-Appellant.

¶ 1. **Robinson, J.** Defendant Casey Hafford appeals pro se from the trial court's order granting plaintiff Becky Nystrom's request to partition jointly owned property. Mr. Hafford argues that the court erred in rejecting his argument that he added Ms. Nystrom's name to the deed only in anticipation of marriage, in calculating the parties' respective interests in the property, in granting Ms. Nystrom's request for occupancy, and in declining to award him attorney's fees in connection with Ms. Nystrom's father's Prompt Pay Act claim. We affirm the trial court's rulings concerning the partition itself, but reverse the trial court's ruling with respect to attorney's fees and remand for reconsideration of Mr. Hafford's fee petition pursuant to the Prompt Pay Act.

¶ 2. The essential facts, viewed in the light most favorable to the prevailing party, are as follows. Mr. Hafford and Ms. Nystrom were involved in a romantic relationship between 2002 and 2009. In 2007, Mr. Hafford purchased a plot of land with his own money. In 2009, he executed a quitclaim deed conveying title to himself and to Ms. Nystrom as joint tenants with rights of survivorship. The parties subsequently constructed a home on the property, largely through the efforts of Ms. Nystrom and her family members. When the relationship ended, Ms. Nystrom filed this action, asking the court to partition the property and determine the value of each party's share based on his or her ownership interest and contributions to the property.

¶ 3. Mr. Hafford, who was then represented by counsel, filed an answer and counterclaim, asserting, among other things, that he had conveyed a half-interest to Ms. Nystrom only as a conditional gift in contemplation of a marriage that did not take place. Mr. Hafford subsequently moved to join Scott and Laurie Nystrom, Ms. Nystrom's parents, in the action, noting that they had advanced labor, materials, and money to the parties for the

construction of the house and that they may claim an interest in the property. Ms. Nystrom did not object to Mr. Hafford's motion and, along with parents, moved to file an amended complaint that added parents as plaintiffs. The amended complaint included claims by parents for breach of contract and unjust enrichment in connection with $32,062 advanced by the parents to pay for construction costs, and for violation of the Prompt Pay Act (PPA) in connection with father's contributions of labor in connection with the construction project. The trial court granted the respective motions to join parents and to add their claims to Ms. Nystrom's complaint.

¶ 4. The parties waived the appointment of commissioners and submitted the matter to the court for resolution. After a two-day bench trial, the court issued its order assigning the property to Ms. Nystrom contingent on her paying Mr. Hafford $67,314 for his interest. See 12 V.S.A. § 5174 (allowing for assignment of real estate in partition action provided that assignee pays other party his or her equitable share). At the outset, the court rejected Mr. Hafford's assertion that he had transferred the lot into joint names as a gift in anticipation of marriage, and that his donative intent was negated by Ms. Nystrom's alleged infidelity, which was incompatible with their plans to marry. The court noted that the parties had never been engaged, there was no writing establishing that the transfer was in consideration of an expectancy of marriage, and the deed was unconditional. See *Brousseau v. Brousseau*, 2007 VT 77, ¶ 12, 182 Vt. 533, 927 A.2d 773 (mem.) (recognizing general presumption that the voluntary act of titling property in another's name creates inference of donative intent and delivery). Instead, the court credited Ms. Nystrom's testimony that Mr. Hafford had transferred the lot into joint ownership at her request and based on the expectation that she and her family members would make substantial contributions of time, money, and labor in the eventual construction of the home built on the premises.

¶ 5. Based on the largely undisputed evidence, the court found that Ms. Nystrom had contributed $31,524 toward improvements to the property, and Mr. Hafford contributed $26,700, which included the lot's purchase price. The parties jointly owed $33,048 to parents for funds that they advanced toward the purchase of construction materials.

¶ 6. Turning to parents' claims, the court found that Scott Nystrom, a licensed plumber and skilled practitioner of all aspects

of the building trades, was the de facto construction supervisor for the home-building project. The court found that the house was built almost entirely with volunteer labor and Ms. Nystrom and her parents supplied the substantial portion of it. The court did not credit father's testimony, however, that he had told Mr. Hafford that he expected to be paid for his labor in the event that Ms. Nystrom did not occupy the premises. Accordingly, the court rejected the father's PPA claim that was predicated on his labor in building the house.[1]

¶ 7. The court's initial decision suggests that it rejected the parents' direct claims based upon their financial contributions to the construction project and instead folded those claims into its analysis of Ms. Nystrom's and Mr. Hafford's respective rights. However, in its ultimate judgment order, the court did enter a judgment in the parents' favor in the amount of $33,048, to be treated as a lien on the subject property.

¶ 8. With respect to the partition, the court found that the equities tipped in favor of Ms. Nystrom's request for occupancy. It reasoned that Ms. Nystrom's greater contributions to the financing, organization, and "sweat equity" in the construction process outweighed Mr. Hafford's initial acquisition of the land at his sole expense. Also to Ms. Nystrom's credit was her capacity to inspire the devotion of her parents and extended family, without whom the very well-built house could not have been constructed except by substantial additional expenditures of money and time. Additionally, the court found that the presence of so many members of Ms. Nystrom's extended family in locations proximate to the property favored her claim, as did her likely superior capacity to finance a prompt payment for Mr. Hafford's interest, while absorbing the debt to her parents.

¶ 9. The court determined that the fair market value of the property was $172,500, and the equity to be divided was $139,452 after accounting for the joint debt to parents of $33,048. Each party's share of the equity was thus $69,726, which the court found must be further adjusted by the difference in their respective monetary contributions toward the improvements. Ms.

---

[1] The trial court describes the PPA claim as a claim of both parents, and in their respective briefs, both parties likewise characterize the claim. Although captioned in the complaint as a claim of "Scott & Laurie Nystrom," the PPA claim itself was a claim for reimbursement solely for father's labor. For that reason, we describe the PPA claim as father's claim, rather than as parents' claim.

Nystrom had contributed $4824 more than Mr. Hafford; therefore, her obligation to him was reduced by $2412, leaving the value of Mr. Hafford's interest at $67,314. It thus ordered Ms. Nystrom to pay this amount to Mr. Hafford upon the assignment of his interest in the property. The court did not award attorney's fees to either party.

¶ 10. The court issued a subsequent order in response to a motion to amend and clarify. In this order, the court rejected Mr. Hafford's claim that he was entitled to attorney's fees as the substantially prevailing party as to the claim brought by father under the PPA. The court found that, under all of the circumstances, plaintiffs were arguably the overall prevailing parties and thus neither party could claim to have substantially prevailed as to the claim under the PPA. The court thus upheld its earlier decision not to award attorney's fees.

¶ 11. In reaching its conclusion, the court recognized that parents had chosen to pursue a PPA claim for labor, forcing Mr. Hafford to defend against this claim. Nonetheless, the court concluded that, in general, the testimony and evidence regarding parents' claims focused on their overall contributions of material and labor and thus supported Ms. Nystrom's equitable plea for occupancy pursuant to her partition claim. While the court did not find that father was entitled to reimbursement for his labor, it did find parents' testimony instrumental to Ms. Nystrom's claim in partition. The court also noted that Mr. Hafford's separate claim based on lack of donative intent had occupied a good deal of the evidence and testimony, and this placed him in an untenable position when claiming to have "substantially prevailed" as to any aspect of the litigation.

¶ 12. On appeal, Mr. Hafford first argues that the court should have credited his argument that the property transfer was made in contemplation of marriage. See 15 V.S.A. §§ 1001-1002 (while cause of action for breach of contract to marry has been abolished, party may have right of action for rescission of deed to real property when the sole consideration for the transfer was a contemplated civil marriage which has not occurred). As reflected above, the court credited Ms. Nystrom's conflicting testimony that Mr. Hafford transferred the property into joint names based on the expectation that Ms. Nystrom and her family would be contributing time and money to the construction of a home on the

property, and concluded that the evidence did not support Mr. Hafford's position. The trial court is entrusted with the responsibility of weighing the evidence and assessing the credibility of witnesses. *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997). Its findings on this question are supported by sufficient evidence in the record, and we will not reweigh the evidence on appeal.

¶ 13. Second, Mr. Hafford makes several arguments relating to the court's calculation of the parties' respective contributions to the equity in the property. He argues that the court should have found that, at the time of the transfer of the property to the parties jointly, the property was worth $80,000. The trial court specifically rejected this argument. It found that the evidence offered in support of this claim was unreliable and speculative. The court found that the determinative values impacting its analysis in this case were the purchase price, each party's documented expenses, and the present fair market value. Given that the house construction was, according to Mr. Hafford's own testifying appraiser, thirty-seven percent complete at the time of the transfer, the trial court did not abuse its discretion in considering Mr. Hafford's initial investment in the property rather than its value at the time of transfer in conducting its equitable analysis.

¶ 14. Mr. Hafford further challenges the record support for the trial court's calculation of the parties' contributions. Ms. Nystrom provided evidence to support her claim that she paid $31,524 in construction expenses; parents testified that their total advances for materials, less repayments already made, amounted to $33,048. The parties stipulated to much of the evidence underlying these figures. Accordingly, we conclude that the trial court's findings with respect to the parties' respective contributions were supported by sufficient evidence in the record, and we will not reweigh the evidence.

¶ 15. Mr. Hafford also suggests that the trial court improperly included an $8000 home equity loan that parents took out to help pay for construction expenses as part of Ms. Nystrom's expenses *and* as part of the debt to parents. The record does not support this claim. Mother testified that the total amount of outstanding expenses advanced by parents was $33,048. The $8000 loan was not itself an expense but, rather, was the means they used to

finance a portion of the total expenses they claimed and documented. Parents did "charge" Ms. Nystrom and Mr. Hafford interest in connection with that $8000, since parents were paying interest on those funds. Likewise, Ms. Nystrom's claimed and documented contributions to the costs of building the house reflect her actual expenses. She did not claim the $8000 parents borrowed to finance some of the expenses they advanced as part of "her" expenses. We thus reject Mr. Hafford's claim that this money should be deducted from Ms. Nystrom's contribution, as it was not included in the first place.

¶ 16. In addition, Mr. Hafford argues that parents should not be reimbursed for the cost of vinyl siding that has not yet been installed. The record shows, however, that at the time of suit the siding was not installed, but was on site and ready to go on the house.

¶ 17. Third, Mr. Hafford challenges the trial court's decision to assign the property to Ms. Nystrom. The court identified numerous reasons why it assigned the property to Ms. Nystrom subject to her payment to Mr. Hafford for his interest. The court reasonably considered, among other factors, Ms. Nystrom's greater contribution to financing, organizing, and facilitating the construction process, as well as her family's quite substantial contributions of labor and money. Ms. Nystrom also testified that she had been pre-approved for a loan, and the court did not err in finding that she had a "likely superior capacity" to finance a prompt payment for Mr. Hafford's interest, while absorbing responsibility for the debt to her parents. Given this evidence, we cannot conclude that the trial court abused its discretion in assigning Ms. Nystrom the property. See *Weed v. Weed*, 2008 VT 121, ¶ 16, 185 Vt. 83, 968 A.2d 310 (reviewing equitable remedies for abuse of discretion).

¶ 18. Finally, Mr. Hafford challenges the court's decision not to award him attorney's fees under the PPA. See 9 V.S.A. § 4007(c) (providing that "[n]otwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter [addressing construction contracts] shall be awarded reasonable attorneys' fees in an amount to be determined by the court or arbitrator, together with expenses"). In his argument on appeal, Mr. Hafford focuses on the PPA claim itself, based on a claim for payment for father's labor;

Mr. Hafford unequivocally prevailed on this claim, as the trial court found no evidence of any agreement that father would be paid for his labor in the event that Ms. Nystrom did not occupy the house.

¶ 19. This Court has held that, where a common core of facts supports multiple theories of recovery, including PPA claims and non-PPA claims, "[t]he lawsuit cannot be viewed as a series of discrete claims." *Electric Man, Inc. v. Charos*, 2006 VT 16, ¶ 10, 179 Vt. 351, 895 A.2d 193 (quotation omitted). Accordingly, we concluded that the trial court in such a case abused its discretion in apportioning a PPA fee award based on the recovery on each claim. *Id.* As a result, in most construction cases that include PPA claims, courts typically determine the substantially prevailing party, if any, and the award of fees with reference to the broader range of claims at issue in the case rather than simply focusing exclusively on the PPA claim. See, e.g., *B & F Land Dev., LLC v. Steinfeld*, 2008 VT 109, ¶ 16, 184 Vt. 624, 966 A.2d 127 (mem.) (where same evidence was central to plaintiff's claim and defendant's PPA counterclaim, trial court properly awarded prevailing defendant attorney's fees that included fees to defend against plaintiff's claims).

¶ 20. In addition, we have recognized that, although an award of attorney's fees to the substantially prevailing party in a PPA case is mandatory, trial courts have significant discretion in identifying the prevailing party in such cases. *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 12, 178 Vt. 77, 872 A.2d 292. In affirming an award of attorney's fees under the PPA to a contractor that was ordered to *pay* a net judgment to a homeowner, this Court rejected a "net victor" test in favor of "a more flexible and reasoned approach focused on determining which side achieved a comparative victory on the issues actually litigated or the greater award proportionally to what was actually sought." *Burton v. Jeremiah Beach Parker Restoration & Constr. Mgmt. Corp.*, 2010 VT 55, ¶ 8, 188 Vt. 583, 6 A.3d 38 (mem.) (quotations omitted).

¶ 21. Notwithstanding the flexible standard this Court has endorsed, we conclude that the trial court's order in this case exceeds its discretion. PPA claims typically arise in construction disputes in which one party seeks to be paid for its work and the other party seeks to avoid paying on the ground that the work was deficient. In such cases, the commonality of facts underlying

the PPA claim and related claims and defenses sounding in contract, unjust enrichment, consumer fraud, or other such causes of action, is apparent. See *Electric Man*, 2006 VT 16, ¶ 10 (applying "common core of facts" analysis where "[v]irtually all of the evidence is relevant to all of the claims" (quotation omitted)). This case falls outside of that paradigm. That is, this case is not a typical construction dispute in which a court cannot reasonably determine the substantially prevailing party with respect to the PPA claim without taking into account the panoply of other claims on the table.

¶ 22. Father's PPA claim is predicated solely on his labor in constructing the house on the property subject to this partition action. The subjects of the remaining claims among the parties were: (1) whether the property was transferred into joint names (Mr. Hafford's and Ms. Nystrom's) in contemplation of marriage without an intent to transfer a property interest to Ms. Nystrom independent of that expectation; (2) the extent of Mr. Hafford's and Ms. Nystrom's respective contributions to, and equitable interests in, the property; (3) the balance of the equities between Mr. Hafford and Ms. Nystrom with respect to assignment of the property; and (4) parents' entitlement to reimbursement for their financial contributions to the construction, independent of their contributions of labor that formed the basis for the PPA claim.[2] These various claims do not spring from a core of facts in common with father's PPA claim, which focused solely on his claim for compensation for the time and labor he contributed to the building project,[3] and the evidence underlying these claims is largely distinct from the evidence offered to prove and rebut father's PPA claim.

¶ 23. The only other issue in the case with respect to which the evidence and argument relating to father's labor *was* relevant was Ms. Nystrom's request that she be assigned the property in the partition action; in evaluating the PPA issue, the trial court emphasized that the testimony and evidence regarding the con-

---

[2] Parents pled both unjust enrichment and breach of contract with respect to their financial contributions to the project; the gravamen of both claims was that parents were entitled to reimbursement for their financial contributions.

[3] Father cited his contributions of labor as the basis for his PPA claim and as a basis for parents' unjust enrichment claim. To the extent that father sought a remedy by way of unjust enrichment for his labor contributions, he lost on that claim as well.

tributions of material and labor by the parents was instrumental to Ms. Nystrom's equitable plea for occupancy in the partition action. But by crediting *parents* in connection with their PPA claim for reimbursement for father's labor with *Ms. Nystrom's* "win" on her equitable claim to occupancy, the trial court treated parents and Ms. Nystrom as essentially one party. Although the personal and emotional alignment of parents and child in this case is obvious, their legal interests were not so overlapping as to warrant treating them as the same party. While we can imagine multi-party cases in which two or more parties share such a commonality of legal and financial interests that the victory of one party on a claim or set of claims involving a common core of facts may be imputed to another for the purposes of determining who is the prevailing party for PPA purposes, in this case the legal and financial interests of the parents and their daughter are not so aligned.

■ ¶ 24. We do not mean to suggest that, in a more typical construction dispute, trial courts must parse PPA and non-PPA claims in identifying the substantially prevailing party in connection with the PPA claim, or in calculating a fee award. We reaffirm our prior holding that a fee award should *not* be apportioned among claims that arise from a common core of facts. *Electric Man*, 2006 VT 16, ¶ 10. However, as a threshold matter, trial courts must consider and determine which claims do, in fact, arise from a common core of facts insofar as the evidence relevant to those claims is the same. *Id.* ¶¶ 10, 17.

■ ¶ 25. On remand, the trial court should make a reasonable effort to award Mr. Hafford legal fees associated with father's PPA claim for reimbursement for labor in connection with the construction project, as well as any other claims by father resting on the same core set of facts.[4] See *Monahan v. GMAC Mortg. Corp.*, 179 Vt. 167, 199, 893 A.2d 298, 324 (2005) (determining attorney's fees attributable to specific claims is a question of fact for the trial court).

*Affirmed in part, reversed in part, and remanded for further proceedings.*

---

[4] For example, father pled a count entitled "conditional gift" that was predicated on his contributions of labor to the construction project.