NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 88

No. 2016-372

| | |
|---|---|
| Gill Terrace Retirement Apartments, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Marie Johnson | April Term, 2017 |

Mary Miles Teachout, J. (decision on merits); Robert P. Gerety, Jr., J. (judgment order)

Joanna K. Watts of Bennett & Zaikowski, P.C., Shelburne, for Plaintiff-Appellee.

Jacob S. Speidel, Vermont Legal Aid, Inc., Springfield, for Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Dooley, J. (Ret.),
Specially Assigned

¶ 1. **SKOGLUND, J.** Tenant Marie Johnson appeals the trial court's conclusion that she violated two material terms of her residential rental agreement: a "no-smoking" policy and a "no pets" policy. We affirm based on the no-pets violation. The court did not err in concluding that tenant was not entitled to a reasonable accommodation for a specific emotional support animal. Given our holding, we find it unnecessary to address whether the court erred in finding that tenant violated the no-smoking policy.

¶ 2. Following a final hearing in this eviction action, the court made the following findings. Landlord owns residential housing complexes with apartments for disabled senior residents. The housing complex in question receives federal funding assistance under Section 8

of the Housing Act of 1937, codified as 42 U.S.C. § 1437f. The U.S. Department of Housing and Urban Development (HUD) administers the programs authorized by Section 8, including the rental assistance received by landlord. Tenant was a resident of one of the apartments since 2002.

¶ 3. The lease governing tenant's unit prohibited residents from keeping pets unless the landlord consented or the tenant qualified for a reasonable accommodation for a person with a disability. Those who qualified for a reasonable accommodation were required to seek approval through a set procedure.

¶ 4. At some point after October 1, 2009, tenant's son and his dog, Dutchess, lived with tenant in tenant's apartment. Dutchess never attacked another person or pet, but she did display aggressive behavior towards other dogs and people—including lunging, flaring up, rearing on her hind feet, and baring her teeth. In addition, the dog often went "crazy" when other residents or dogs passed by tenant's apartment. Tenant told one resident that Dutchess was trained as a guard dog, and she asked another resident to adjust her dog's walk schedule to avoid Dutchess. Some tenants stayed indoors if they thought that Dutchess was outdoors, and some expressed fear of the dog.

¶ 5. In December 2013, tenant's son moved out of the apartment, but Dutchess stayed. In January 2014, landlord questioned tenant about the dog. Tenant explained that she had a doctor's note recognizing her need for an emotional support animal as a result of her disability, but she did not supply the note. At the time, according to tenant, she was receiving medical treatments and, as a result, she was unable to control Dutchess. Because she could not take the dog out, one of her children took the dog out instead.

¶ 6. In February 2014, landlord sent a letter to tenant requiring her to rectify three lease violations[1] including possessing an unauthorized pet and smoking in her apartment. The alleged

---

[1] This appeal does not involve the third claimed violation, which was tenant's alleged failure to move her car during snow plowing.

smoking violation relied on an addendum to the lease that prohibited smoking in all indoor areas including the apartment units, as well as common areas, entry areas, and laundry room. Smoking was also prohibited outdoors, except for the designated, sheltered smoking area. The lease addendum and new smoking policy became effective on January 1, 2014.

¶ 7.    Two months after the February 2014 notice, the landlord sent tenant a notice of termination of tenancy. The notice terminated tenant's lease as of May 25, 2014 for violating the "no-smoking" and "no-pets" policies. Following this notice, an informal meeting occurred between tenant, landlord's manager, and landlord's attorney. At the meeting, tenant maintained her need for Dutchess as an emotional support animal and that, as a result, a reasonable accommodation for her disability should be made to the "no-pets" policy. Landlord's attorney delivered to tenant the paperwork required to submit a request for a reasonable accommodation. Tenant asserts that she did not receive the paperwork, and therefore, she could not complete and submit it. After this meeting, she kept Dutchess and continued to use e-cigarettes in her apartment.

¶ 8.    On June 9, 2014, landlord served tenant with process to begin this eviction action. At this point, tenant submitted a request to keep her dog under the pet policy exception for reasonable accommodation. With her request, tenant provided a note from a health professional that read: "I believe [tenant] should have a pet companion because she has chronic pain—which leads to poor sleep and [increased] anxiety—I think having her pet in home helps with that anxiety—therefore she can sleep. This is not however a service animal but a therapeutic recommend [sic]."

¶ 9.    In an August 8, 2014 letter, landlord approved tenant's request for an assistance animal as a reasonable accommodation, but did not approve of Dutchess as the specific animal because of the dog's hostility, complaints from other residents, and tenant's inability to restrain the dog. In addition to the residents' complaints, landlord also relied on a hypothetical increase in

3

its insurance and a June 8, 2014 incident involving the police and Dutchess. As the eviction proceedings proceeded, Dutchess continued to live with tenant.

¶ 10. In April 2015, landlord informed the tenants about an anticipated HUD inspection. Tenant left a voicemail at landlord's office, notifying landlord of her absence during the inspection and urging that no one should enter her apartment because Dutchess might attack. Tenant's son took the dog to the other side of the property during the inspection.

¶ 11. As of the June 2016 eviction hearing, tenant testified that she has been taking Dutchess outside—not to exercise—but for brief bathroom breaks. Tenant also testified that her medical problems are recurring. Under such circumstances, she does not know if she could restrain the dog.

¶ 12. After hearing all of the evidence, the trial court concluded that tenant breached both the "no-smoking" policy and the "no-pets" policy. As relevant here, the court concluded that, although tenant was entitled to a reasonable accommodation for an emotional assistance animal, tenant was not entitled to the specific animal in question. In support, the court relied on the testimony of residents establishing that Dutchess displayed aggressive tendencies and that the dog was "people and dog aggressive." The court did not base its decision on landlord's reliance on the potential increase in insurance, the June 8, 2014 incident involving the police, or Dutchess's breed; instead, the court concluded that the remaining testimony supported the conclusion that a reasonable accommodation for an assistance animal did not extend to Dutchess. Because the court determined that tenant violated two material terms of the lease, the court granted landlord's request to terminate tenant's lease and ordered a writ of possession.

¶ 13. Tenant now appeals and challenges the court's conclusions with respect to both the "no-smoking" policy and the "no-pets" policy. We affirm the court's conclusion that, although tenant was entitled to an emotional assistance animal, such reasonable accommodations did not

4

extend to the specific animal Dutchess. Because we affirm the court's decision on the "no-pets" violation, we find it unnecessary to address the "no-smoking" provision.

¶ 14. Our review of a court's legal conclusions is nondeferential and plenary, but we will not set aside a court's factual findings unless they were clearly erroneous. Bennington Hous. Auth. v. Bush, 2007 VT 60, ¶ 7, 182 Vt. 133, 933 A.2d 207. Here, reasonable and credible evidence supports the court's findings. N.A.S. Holdings, Inc. v. Pafundi, 169 Vt. 437, 438, 736 A.2d 780, 783 (1999). Given the highly fact specific nature of the reasonable-accommodation inquiry, the court did not err in reaching its conclusion.

¶ 15. Under the Fair Housing Act (FHA), housing providers may not "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of a handicap of any person associated with that person." 42 U.S.C. § 3604(f)(2)(C). Prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." Janush v. Charities Hous. Dev. Corp., 169 F. Supp. 2d 1133, 1136 (N.D. Cal. 2000) (quotation omitted).

¶ 16. If a landlord has a "no-pets policy," a tenant may be provided a reasonable accommodation for an assistance animal if the tenant demonstrates that he or she is disabled and that the tenant has a disability-related need for an assistance animal. HUD Office of Fair Housing & Equal Opportunity, Notice FHEO-2013-01, at 2-3 (April 25, 2013) [hereinafter "Notice FHEO-2013-01"], https://portal.hud.gov/hudportal/documents/huddoc?id=servanimals_ ntcfheo2013-01.pdf [https://perma.cc/5PYL-QSN2].[2] If the tenant establishes these elements, the landlord must

---

[2] HUD interpretations of the FHA are entitled to Chevron deference. Meyer v. Holley, 537 U.S. 280, 287-88 (2003) (citing Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-845 (1984)).

modify or provide an exception to the "no-pets" policy to allow the tenant to use an assistance animal, "unless doing so would impose an undue financial and administrative burden or would fundamentally alter the nature of the housing provider's services." Notice FHEO-2013-01, at 2-3.

¶ 17.  In the case of a specific service animal, a reasonable accommodation may also be denied in two circumstances: if "(1) the specific assistance animal in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation, or (2) the specific assistance animal in question would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation. Id. at 3.  This individualized assessment of a specific animal is highly fact specific. Warren v. Delvista Towers Condo. Ass'n, 49 F. Supp. 3d 1082, 1088 (S.D. Fla. 2014) (denying summary judgment motion because "whether [emotional support animal] poses a direct threat that cannot be mitigated by another reasonable accommodations is not a question of law, it is distinctly a question of fact").  It must be based on objective evidence of the animal's conduct. Notice FHEO-2013-01, at 3.  It may not be based on a dog's breed or size, mere speculation or fear that the animal may harm someone or damage property, or evidence of damage caused by other animals. Id.; see also Castellano v. Access Premier Realty, Inc., 181 F. Supp. 3d 798, 807-08 (E.D. Cal. 2016) (applying Notice FHEO-2013-01 and denying summary judgment because "reasonable accommodation" was highly fact-specific inquiry).

¶ 18.  In this case, the parties do not dispute that tenant is disabled and that she has a disability-related need for an emotional support animal.[3]  Although landlord allowed tenant a

---

[3]  Because the parties do not dispute tenant's status or her disability-related need for a service animal, we do not analyze a broader test for a FHA claim based on failure to reasonably accommodate.  See Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006) (outlining five-part test to state claim for failure to reasonably accommodate).

reasonable accommodation for an assistance animal, landlord denied tenant's request for Dutchess to be the specific assistance animal. The trial court upheld landlord's denial.

¶ 19. In reaching this determination, the court relied on reasonable and credible evidence that demonstrated Dutchess often exhibited aggressive tendencies. For example, the court credited testimony that Dutchess regularly rears up on her back legs, lunges, or bares her teeth at people and other dogs when she's outside. Similarly, the court relied on testimony that tenant told another resident that Dutchess was trained as a "guard dog" and was "people and dog aggressive," and that she asked the resident to walk her dog at different times to avoid interactions with Dutchess. The court further noted that some residents deliberately stayed indoors to avoid Dutchess and that other residents were afraid of the dog. Finally, the court found that the evidence suggested tenant may not be able to control Dutchess. Because "determining whether [Dutchess] poses a direct threat that cannot be mitigated is . . . distinctly a question of fact," the court did not err by relying on these findings and concluding that sufficient evidence supported landlord's denial. Warren, 49 F. Supp. 3d at 1088. Like landlord, the court recognized that tenant could obtain another dog as an emotional support animal, but denied the reasonable accommodation for Dutchess because the evidence established that Dutchess posed a threat to others and that Dutchess would cause substantial physical damages to the property.

¶ 20. We are not persuaded by tenant's arguments to the contrary. Tenant first claims that the trial court erred because it did not assess landlord's erroneous reliance on a theoretical increase in insurance rates and on second-hand reports of a June 8, 2014 incident involving Dutchess and the police. But the court did consider both events and concluded that neither supported landlord's decision to deny reasonable accommodation for Dutchess. Instead, as described above, the court relied on the testimony of other residents to support its conclusion that Dutchess exhibited aggressive behavior.

7

¶ 21. Similarly, tenant attacks the findings of the court with respect to Dutchess's aggressive behavior. In doing so, she points to testimony from landlord's witness allegedly supporting tenant's position and also argues that, although the testimony does support single incidents of aggressive behavior, these occasional incidents do not support the court's ultimate conclusion. But "[a] determination by the trier of fact must stand if supported by credible evidence, even if inconsistencies or contrary evidence exists." Bruntaeger v. Zeller, 147 Vt. 247, 252, 515 A.2d 123, 126 (1986). As described above, credible evidence supports the court's decision and we defer to the court's weighing of the evidence. Whippie v. O'Connor, 2010 VT 32, ¶ 12, 187 Vt. 523, 996 A.2d 1154.

¶ 22. Finally, tenant argues that the court erred because it did not consider methods to reduce or mitigate the danger Dutchess posed. As an initial matter, it does not appear that tenant suggested steps to reduce Dutchess's aggressive behavior, and it is doubtful that the court has an independent obligation to introduce additional mitigation methods. See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) (noting in context of Americans with Disabilities Act that "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made"). Moreover, the court's findings suggest that tenant was already attempting to mitigate Dutchess's behavior but even those steps would not reduce the potential for aggression that the other residents reasonably feared. For example, tenant allowed Dutchess out only for certain limited times, barely walked Dutchess, and often kept Dutchess contained in another room of her apartment. Similarly, the court noted that tenant may not be able to control Dutchess, implying that any mitigation measures may be limited. "The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to [landlord]) and benefit (to [tenant]) merit consideration as well." Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995). Like the trial court, we acknowledge tenant's attachment to Dutchess and her need for an emotional support animal,

but the court properly weighed the evidence regarding Dutchess's aggressive behavior against landlord's concerns for the safety and wellbeing of the other residents.  As a result, we conclude that the court did not err in affirming landlord's denial of tenant's reasonable accommodation request.

Affirmed.

FOR THE COURT:

_____

Associate Justice