NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 18

No. 22-AP-178

| | |
|---|---|
| Beverly Newton Wells et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Lamoille Unit, |
| | Civil Division |
| | |
| Pall Spera | January Term, 2023 |

David A. Barra, J.

Brice C. Simon of Breton & Simon, PLC, Stowe, for Plaintiffs-Appellants.

Wm. Andrew MacIlwaine and Lena M. Capps of Dinse P.C., Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** Plaintiffs appeal a civil-division order assigning real property to defendant in this partition action. We affirm.

## I. Background

¶ 2. Plaintiffs Newton and Jason Wells, who are brothers,[1] and Beverly Wells, their mother, filed suit in September 2017 seeking to partition real property they held as tenants in common with defendant Pall Spera in Stowe, Vermont. The court granted plaintiffs' summary-judgment motion on the question of whether they were entitled to partition as a matter of law, and

---

[1] For ease of reference, we will refer only to Newton and Jason when using "plaintiffs" in the remainder of this opinion.

issued an order of appointment of commissioners and order of reference by consent of the parties. The order appointed three commissioners and directed them to determine whether the property could be divided, assigned to one of the parties, or sold. They were ordered to determine the fair market value of the property and each person's equitable share. Neither party reserved the right to object to the commissioners' report.

¶ 3. The commissioners held a two-day evidentiary hearing in late July 2021. The parties appeared and testified and put on evidence with the assistance of counsel. The commissioners took the matter under advisement and submitted their decision and findings of fact to the trial court in late March 2022. They found the following relevant facts.

¶ 4. The subject property is 0.39 acres and contains two buildings separated by a shared driveway leading to a parking area in the rear of the lot. One structure is a 2400-square-foot family home now operated as a short-term rental, and the other is a 1500-square-foot office building leased by a limited liability company operated solely by defendant. Plaintiffs acquired their half-interest in the property from their mother, and defendant his half-interest from plaintiffs' uncle, Robert Clarke Newton. In 2005, prior to plaintiffs' acquisition of their half-interest in the property, their mother and defendant signed a partnership agreement, which provided certain duties and rights accruing to each owner, established accounting procedures to distribute profits and pay expenses, and contained other provisions not relevant to this action.

¶ 5. Prior to 2017 and the initiation of the lawsuit, the house had fallen into significant disrepair. In that year, following their acquisition of their mother's half-interest, plaintiffs began a significant reconstruction project on the house. Without first obtaining defendant's consent and eventually over his objection, plaintiffs ultimately spent $394,632.15 on labor and materials. Plaintiffs prepared and submitted to the town an application to subdivide the property, but defendant refused to sign it. The application did not proceed.

2

¶ 6.    Plaintiff Newton Wells, who was not a real estate broker and did not have "specialized training" in Vermont real-estate matters, testified, in his capacity as an owner, that the combined value of the property was $2,000,000. Defendant, a real-estate broker, testified that the value of the property was $1,500,000, with one-third attributable to the office building and two-thirds to the house.[2] The commissioners credited defendant's testimony. The commissioners also found defendant to be credible in his testimony that the properties plaintiffs submitted for value comparison were not useful for various reasons.

¶ 7.    The property was presently nonconforming, and division would result in increased nonconformity with respect to lot size and setback requirements. The commissioners found that the probability of obtaining variances for the nonconformities from the Stowe Development Review Board (DRB) was "unlikely at best." Moreover, physical changes to the parking area under separate ownership "would be a great inconvenience to the separate owners."

¶ 8.    Based on these findings, the commissioners concluded that physical division would cause great inconvenience to the parties. Subdivision without zoning approval would likely render the divided properties unmarketable, or would at least reduce their marketability, thereby materially decreasing the combined value of the property as presently existing. Finding division inequitable, the commissioners awarded defendant first right of assignment due to his ability to buy out plaintiffs' interest immediately, while plaintiffs required a loan to do so, and because partition would constitute the dissolution of the partnership agreement, which defendant had wished to continue. The commissioners found that the value of the combined property was $1,500,000, and plaintiffs' equitable interest was $947,316.08, which was equal to their half-interest in the property of $750,000 plus half the reconstruction costs, which totaled $197,316.08.

---

[2] Neither party obtained an appraisal.

3

¶ 9. Plaintiffs filed a motion objecting to the report, citing Vermont Rule of Civil Procedure 53(e)(2)(iii). They contended that the court should either reject the report for cause or modify it to correct certain determinations plaintiffs alleged were clearly erroneous following an additional evidentiary hearing. Plaintiffs' main argument was that the commissioners exceeded their mandate as provided by the order of reference in concluding that partition would result in zoning violations, and the commissioners erred on that question as a matter of law. In the alternative, they argued that the equities favored assigning the property to them. They contended that the commissioners did not properly credit their sweat equity in determining their equitable interest and challenged various findings as clearly erroneous.

¶ 10. The court denied the motion, including plaintiffs' request for a hearing, and adopted the report without qualification. It reasoned that plaintiffs had not reserved their right to object to the report as required by the plain language of Civil Rule 53(e)(2)(iii). The court found that the commissioners had acted within the scope of their mandate as described in the reference order and the record supported their findings and conclusions, and separately entered final judgment. See 12 V.S.A. § 5172. This appeal followed.

¶ 11. Plaintiffs' principal contention on appeal remains that the commissioners' conclusions regarding potential zoning violations are mistaken as a matter of law and they assign error to the trial court's adoption of the commissioner's report. In the alternative, plaintiffs contend that the commissioners abused their discretion by awarding first right of assignment to defendant and miscalculated plaintiffs' equitable interest, and that the matter should be remanded to redetermine the property's value in light of purported changed circumstances in Vermont's real estate market. Plaintiffs maintain that even though they did not reserve an opportunity to object to the commissioners' report, Civil Rule 53 nevertheless provides them an opportunity to object following the delivery of the report to the trial court. They also renew their demand for an evidentiary hearing.

4

## II.  Standard of Review

¶ 12.   We review factual findings made by the commissioners for clear error, and do not disturb them "if any credible evidence fairly and reasonably" supports them.  Messier v. Messier, 140 Vt. 308, 313-14, 438 A.2d 397, 400 (1981).  Plaintiffs bear the burden to demonstrate clear error.  Id. at 314, 438 A.2d at 400.  We review legal questions de novo, Wynkoop v. Stratthaus, 2016 VT 5, ¶ 9, 201 Vt. 158, 136 A.3d 1180, and discretionary determinations for an abuse of discretion.  Currie v. Jane, 2014 VT 106, ¶ 19, 197 Vt. 599, 109 A.3d 876.

## III.  Arguments

### A.  Legal Framework

¶ 13.   Partition actions are governed by statute, 12 V.S.A. §§ 5161-5188, and Civil Rule 53.  Under this framework, once the trial court determines partition is appropriate, it appoints three commissioners who reside in the same county as the subject property and who "shall make partition of the estate," 12 V.S.A. § 5169(a),[3] unless it "cannot be divided without great inconvenience to the parties."  Id. § 5174.  If the property cannot be divided without great inconvenience, the "court may order it assigned to one of the parties, provided he or she pays to the other party such sum of money, at such times and in such manner as the commissioners judge equitable."  Id. § 5174.  Only if no party will take an assignment may courts order the sale of a property.  Id. § 5175.  Following receipt of the commissioners' report, the trial court must accept it "[u]nless cause is shown."  Id. § 5172.

### B.  Partition in Kind

¶ 14.   Plaintiffs first argue that the failure to divide the property offends the long-standing preference to order partition in kind over assignment or sale, and that the decision not to divide because of potential zoning violations exceeded the scope of the commissioners' authority set out

---

[3] Alternatively, parties can move for partition by the court.  Id. § 5169(b).

in the reference order. "The power of [commissioners] is completely dependent upon the order of reference." Malletts Bay Homeowners' Ass'n v. Mongeon Bay Props., LLC, 2008 VT 62, ¶ 12, 184 Vt. 541, 955 A.2d 511 (mem.) (quotation and brackets omitted). Consistent with 12 V.S.A. § 5174, the reference order directed the commissioners to first "determine whether the property c[ould] be physically divided without great inconvenience," and that the test they should use in making this determination was "whether physical division of the property would materially decrease its value." See Blanchard v. Cross, 97 Vt. 370, 373, 123 A. 382, 383-84 (1924) (holding that "the essential consideration" of what constitutes great inconvenience to parties "is [parties'] pecuniary welfare").

¶ 15. Plaintiffs are correct that partition in kind is favored over assignment, see Wilk v. Wilk, 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002), and concede that the test used to determine if division is possible is whether it would materially decrease the property's value as set out in the order of reference. Applying the test, the commissioners concluded that "given the serious zoning hurdles," the property could not "be physically divided without great inconvenience to the parties because doing so has the very real[] potential to materially decrease or perhaps even extinguish the property's value." Therefore, in contrast to plaintiffs' characterization, the issue is not whether the commissioners concluded partition in kind was inequitable purely because division would create zoning violations; instead, the question is whether the commissioners' findings regarding potential zoning violations, among other findings, supported their conclusion that division would materially decrease the property's value. See Billings v. Billings, 114 Vt. 70, 74, 39 A.2d 748, 750 (1944) (explaining that great-inconvenience-to-parties test is whether "the aggregate value of the several parts when held by different persons in severalty will be materially less than the whole value of the property if owned by one person"). The record supports their findings, and the findings support their conclusion not to divide the property.

6

¶ 16. The commissioners credited defendant's testimony that division would result in an overall value of $1,300,000, which was $200,000 less than the $1,500,000 combined value they otherwise found credible. See Okemo Mountain, Inc. v. Lysobey, 2005 VT 55, ¶ 12, 178 Vt. 608, 883 A.2d 757 ("[T]he decision to credit a particular witness . . . is reserved to the factfinder, and will not be disturbed without some compelling indication of error."). Crediting testimony by defendant, the commissioners found that issues arising from the shared driveway and parking spaces would cause great inconvenience to the parties. And as already noted, the commissioners also found that physical division would cause great inconvenience to the parties because division without DRB approval—which was necessary but unlikely at best—would cloud the titles of the divided parcels, potentially rendering them unmarketable. Plaintiffs' own testimony substantiates this finding.

¶ 17. Plaintiff Newton Wells, on direct examination, testified that he was informed that the property would not meet two dimensional requirements, "setbacks and . . . lot size," if subdivided. He testified that he knew that in applying for a zoning permit, "this issue [regarding dimensional waivers] would come up," and plaintiffs had prepared an application to that effect. Plaintiffs do not dispute that the application was never taken up by the DRB because defendant refused to sign it. Instead, plaintiffs place much weight on the fact that the Stowe zoning administrator answered "no" in response to plaintiffs' counsel's question as to whether she "would have any reason . . . to think that that property is not in violation of zoning." However, on cross-examination, the administrator represented that she did not "have the authority to review subdivisions," because that was the DRB's role. The commissioners were free to assign credibility to this testimony and weigh it accordingly. See Okemo Mountain, 2005 VT 55, ¶ 12.

¶ 18. Nevertheless, plaintiffs argue that this Court should adopt the approach of the civil division in Wilcox v. Wilcox, No. 96-3-06, BnCv, slip op. (Vt. Dist. Ct. Feb. 18, 2010), in which the court ordered partition in kind despite some evidence that the resulting parcels would not be

7

approved by local zoning authorities. There are several problems with this argument. First, plaintiffs concede that civil-division rulings are not binding on this Court. Yet even if we were inclined to adopt Wilcox in some manner—which we decline to do today in any respect—Wilcox does not address the relevant question in this appeal. The question here is whether the commissioners can consider potential zoning violations to determine whether physical division would materially decrease the property's value. Indeed, the Wilcox decision expressly notes that the parties did not put on any relevant evidence on that issue, so the court had no choice but to move on to the question it did answer, which was whether municipal zoning regulations can alone override a court's power to order partition in kind. Id. at *8 (holding that such regulations cannot prevent court from ordering partition in kind). We leave the question of whether zoning violations alone can override a court's power to divide real property to be answered on another day.

¶ 19.    Taken together, these findings demonstrate that the commissioners did not abuse their discretion in determining that division would cause great inconvenience to the parties. Their discretion was neither entirely withheld nor exercised "for clearly untenable reasons or to a clearly untenable extent." Currie, 2014 VT 106, ¶ 25 (quotation omitted). It follows that the trial court did not err in accepting this portion of the report. See Messier, 140 Vt. at 314, 438 A.2d at 400.

C. Assignment

¶ 20.    Plaintiffs' next argument is that the commissioners erred by giving defendant first right of assignment. They suggest that the commissioners improperly considered the parties' ability to buy out the other in making this determination. Plaintiffs maintain that any debt they would incur to buy out defendant is not a proper equitable consideration in assigning the property.

¶ 21.    The statute providing courts with the power to order assignment, 12 V.S.A. § 5174, "gives the trial court as many options as possible to achieve equity between the parties, including an expansive power to assign property to one of the co-tenants." Wilk, 173 Vt. at 346, 795 A.2d at 1194. To this end, we have held that it was not an abuse of discretion where assignment was

8

awarded to a plaintiff who had been pre-approved for a loan to "finance a prompt payment" for the defendant's interest, "while absorbing responsibility" to pay for work done to improve the property. Nystrom v. Hafford, 2012 VT 60, ¶ 17, 192 Vt. 300, 59 A.3d 736. We have noted, however, "[a] genuinely arbitrary decision [awarding assignment] would not survive abuse-of-discretion review on appeal." Wilk, 173 Vt. at 348, 795 A.2d at 1195.

¶ 22. The decision to award defendant first right of assignment is not arbitrary under the factfinder's "expansive power to assign property." Id. at 346, 795 A.2d at 1194. The commissioners found that defendant "would be able to buy-out [sic] plaintiffs' 50% interest immediately and without the need for taking out a loan, while plaintiffs testified that they would need to secure a loan." As in Nystrom, the findings about the parties' relative abilities to timely buy out each others' interests are appropriate equitable considerations. See 12 V.S.A. § 5174 (providing that court may assign property "to one of the parties, provided he or she pays to the other party such sum of money, at such times and in such manner as the commissioners judge equitable"). For this reason alone, the decision to assign the property to defendant is not "genuinely arbitrary." Wilk, 173 Vt. at 348, 795 A.2d at 1195. However, the commissioners also made the assignment out of fairness with respect to the partnership defendant otherwise wished to continue. This was also a reasonable consideration. See, e.g., Nystrom, 2012 VT 60, § 17 (holding that court "reasonably considered . . . other factors" such as plaintiff's "greater contribution to organizing[] and facilitating" home construction).

¶ 23. In the alternative, plaintiffs contend that the commissioners erred by not crediting them with personal sweat equity in reconstructing the house. While the commissioners could have been clearer on this topic, the report did state that "improvement costs will not necessarily lead to a 1:1 increase in value of a structure," and plaintiffs "should receive a credit for work done, but not a 1:1 credit for money actually spent." The commissioners cited expense statements proffered by plaintiffs and credited them with the sum of certain figures plaintiffs had circled, which totaled

9

$394,632.15. This in part satisfied the reference order's mandate to determine "the sum or sums that are equitable compensation for the assignment," and to consider "the relevant contributions of each individual" with respect to each individual's equitable interest. The commissioners were not bound to credit plaintiffs' testimony concerning the increase of property value as a result of their personal work, and they did not. Okemo Mountain, 2005 VT 55, ¶ 12 ("[T]he decision to credit a particular witness . . . is reserved to the fact-finder, and will not be disturbed without some compelling indication of error."). The commissioners were bound to support their findings and determinations with credible evidence, and they did. See Gill Terrace Ret. Apartments, Inc. v. Johnson, 2017 VT 88, ¶ 21, 205 Vt. 549, 177 A.3d 1087 (explaining that determinations made by factfinder must stand if supported by credible evidence and that this Court defers to factfinder's weighing of evidence). The trial court, accordingly, did not err by accepting the report without modifying the decision to assign the property to defendant or to the challenged findings and determinations made by the commissioners. See Messier, 140 Vt. at 314, 438 A.2d at 400.

### D. Civil Rule 53(e)(2)

¶ 24. Next, plaintiffs contend that under Civil Rule 53(e)(2) they are entitled to an additional hearing in the trial court to challenge the report. This argument is unavailing. Plaintiffs' request is conditioned on the premise that certain findings are clearly erroneous. Having now reviewed the challenged findings and concluded that they are not clearly erroneous, further proceedings are redundant. See Alberino v. Balch, 2008 VT 130, ¶ 7, 185 Vt. 589, 969 A.2d 61 (mem.) ("We will not set aside factual findings unless they are clearly erroneous. Findings are clearly erroneous if there is no credible evidence in the record to support them." (citation omitted)). Accordingly, we need not and do not address whether Rule 53(e)(2) permits a party to object to a report following the report's delivery to the trial court where the party did not reserve a right to object in the first instance.

## E. Redetermine Property Value

¶ 25. Finally, plaintiffs request a remand to redetermine the property's value because of purported changes in the real-estate market. Plaintiffs fail to cite where this argument was preserved and cite no case or other legal authority in support. Accordingly, we will not review it. V.R.A.P. 28(a)(4)(A) (requiring litigant to demonstrate how issues were preserved and to support argument with citations to authorities and parts of record relied upon); see Kneebinding, Inc. v. Howell, 2020 VT 99, ¶ 61, 213 Vt. 598, 251 A.3d 13 ("Mere naked statements, unsupported by argument or citation of authorities, constitute inadequate briefing and merit no consideration." (quotation omitted)).

Affirmed.

FOR THE COURT:

_____

Associate Justice